[No. 8,023.—In Bank.]
November 28, 1882.

## THE PEOPLE *v.* J. D. STEPHENS ET AL.

WATER SUPPLY.—Prior to the adoption of the Constitution of 1879, the right of laying pipes in the streets of any incorporated city or town in this State for the purpose of supplying the inhabitants of such city or town with fresh water lay only in grant from the Legislature.

CONSTITUTION.—The provisions of the Constitution of 1879 in reference to the supplying of municipalities with fresh water, made many changes from the pre-existing condition of things.

CONSTITUTION—CONSTRUCTION OF.—All of these provisions of the Constitution, to wit, Art. xi., § 19, Art. xiv., § 1, and Art. xiv., § 2, must be taken and read together, and effect given to each of them.    They must, like all other provisions of the Constitution, receive a practical common-sense construction, and be considered with reference to the prior state of the law and the mischief intended to be remedied by the change.

WATER—PUBLIC USE.—By Sec. 1 of Art. xiv. of the Constitution, the use of all water heretofore or hereafter appropriated for sale, rental, or distribution, is expressly declared to be a public use, and it *is* not now left to the Legislature, as formerly, to say whether it shall be a public use or not.    The Constitution itself declares it to be such, and then makes the use subject to the regulation and control of the State; that is to say, of the Legislature, in the manner to be prescribed by statute, subject, however, to certain enumerated provisions contained in the constitution itself, and among them to the provisions in respect to the rates or compensation to be collected by any person, company, or corporation for the use of water supplied to any city and county, or city or town, or the inhabitants thereof.

RATES—FIXING OF.—The Constitution expressly declares that such rates or compensation shall be fixed in a certain specified manner, at a certain time, and by a certain body; and the body failing to do so is expressly made subject to peremptory process to compel action at the suit of any party interested and liable to such further processes and penalties as the Legislature may prescribe.

RATES—RIGHT TO COLLECT—FRANCHISE.—By the Constitution the right to collect the rates or compensation so established is declared to be a fran-

CAL. REPS. LXII—14

chise, and can not be exercised except by authority and in the manner prescribed by statute.

LEGISLATURE—DUTY OF.—The Constitution contemplated the enacting by the Legislature, where they did not exist, of all laws necessary to give effect to its commands, and that none should be passed in contravention of its provisions. When, therefore, the Constitution fixed the manner of establishing such rates or compensation, and further declared that the right to collect such rates or compensation so established is a franchise, and can not be exercised except by authority of and in the manner prescribed by law, it was the duty of the Legislature, if they did not exist, to provide the needful laws.

LEGISLATURE—FAILURE TO ENACT LAWS—EFFECT OF.—But the failure of the Legislature to enact such laws, if failure there was, could not prevent the establishment of the rates or compensation specifically required to be established by the Constitution.

WATER—GAS—PUBLIC STREETS.—Sec. 19, Art. xi. of the Constitution expressly grants to any individual or company incorporated for that purpose, subject to the direction of the Superintendent of Streets or other officer in control thereof, and under such general regulation as the municipality may prescribe for damages and indemnity of damages, the privilege of laying pipes in the public streets and thoroughfares of any city (where there are no public works owned and controlled by the municipality), so far as may be necessary for introducing into and supplying such city and its inhabitants with gas, or other illuminating light, or with fresh water, subject to the condition that the municipal government shall have the right to regulate the charges thereof.

CITY—TOWN.—The word "City" in Sec. 19 of Art. xi. of the Constitution includes towns.

CONSTITUTION—CONSTRUCTON OF.—The provisions of Sec. 1, Art. xiv. of the Constitution, requiring the rates or compensation to be fixed, have no application to water furnished by a municipality itself. Those provisions refer to the rates or compensation to be collected for water authorized by Sec. 19 of Art. xi. of the Constitution to be introduced into cities by individuals or companies incorporated for that purpose.

APPEAL by the plaintiff from a judgment in favor of the defendants in the Superior Court of the County of Yolo, and from an order denying plaintiff's motion for a new trial, and also from an order made after judgment. BUSH, J.

The action was brought by the Attorney General in the name of the People against the defendants, to require the defendants to show by what right or authority they were claiming and exercising certain franchises in the town of Woodland, and to obtain judgment against them, adjudging that they were doing so unlawfully,; that they be debarred therefrom, and that they be enjoined from making any excavations in the public

streets of that town without the consent of the proper authorities, etc. The following is a statement of the facts: On the seventh day of February, A. D. 1871, one J. W. Peek was the owner of certain water works in Woodland, in the county of Yolo, which works were intended for the purpose of supplying the inhabitants of the town with pure fresh water. At that time Woodland was unincorporated, but on the twenty-second day of February, A. D. 1871, the Board of Supervisors of Yolo County in pursuance of an Act of the Legislature entitled "An Act to provide for the incorporation of towns," approved April 19, 1856, made an order incorporating the town. It was subsequently by an Act of the Legislature, approved March 24, 1874, reincorporated, and has ever since continued its corporate existence under this Act. On the seventh day of February, A. D. 1871, the Board of Supervisors of Yolo County made an order, of which the following is a copy, viz.:

"In the matter of granting to the Woodland Water Works Company the privilege to lay down water pipes in the streets and alleys of Woodland: The petition of Giles E. Sill, agent of the Woodland Water Works Company, asking permission to lay down water pipes through the streets and alleys of Woodland, in this county, coming on to be heard, and the premises, all and singular, being fully considered, it is ordered by the Board that said petition be granted; provided that the said company shall at all times during its use of the privilege above granted, repair and keep in good order all the streets and alleys, or parts thereof, torn up by said water company."

Peek at this time was the only person interested in the Woodland Water Works Company, which name was in reality the name under which he then proposed to, and afterwards did, carry on the business. The Board of Supervisors made no other order granting or purporting to grant any privileges to Peek. After the twenty-second day of February, 1871, Peek, under the name of the Woodland Water Works Company, laid down main and branch water pipes in some of the streets and alleys of Woodland, and continuously until the tenth of April, 1880, was engaged in the business of furnishing water to the inhabitants of the town, and complied with all the conditions and requirements of the Board of Supervisors. On December 3, 1877, the Board of Trustees of Wood-

land adopted a resolution in the following words: " Whereas, it is expedient and necessary that the town should secure an adequate supply of water for use in cases of fire and other public necessities: and, whereas, J. W. Peek has procured and set up at his water works a new pump of sufficient capacity to provide such supply of water, and is willing to convey a controlling interest therein for the sum of four hundred dollars, in gold coin, upon certain conditions set forth in a deed for the same this day tendered by him; now, therefore, be it

" Resolved, That the said deed be and is hereby accepted; and the President of the Board of Trustees be and he is hereby authorized and directed to execute the same on the part of the town; and the Town Clerk is hereby directed to draw his warrant for the sum of four hundred dollars in gold coin in favor of said J. W. Peek in payment therefor."

On the same day there was duly executed by and on behalf of Peek and the town of Woodland, in pursuance of the resolution, an indenture by which Peek sold and transferred to the town an "undivided four-seventh of that certain pump used by the party of the first part (Peek) in raising water at his water works in said town, being the new pump lately put in by him," and " also, the use of said system of water works in connection with said pump in the manner and to the extent specified in the covenants hereinafter contained." It was covenanted that Peek should run the water works at his own expense and for his own profit; that he should furnish water to the town for all municipal uses, at all points in his then present system of pipe service, in preference to all other customers, and that the town in like manner should have the benefit of any extension of the system; that the Board of Trustees might regulate the use of the water by private individuals, so as to secure for the town a sufficient supply of water in cases of fire or other public necessity, and that he (Peek) should receive a reasonable compensation for water furnished. On the sixth day of October, A. D. 1879, the supply of water for said town and its inhabitants was insufficient for use in case of fire and for the ordinary use of the citizens of said town, and it became necessary to increase the same; and it became and was necessary that said water works should be under the control and management of the authorities of said

town, both as to the rates to be charged for water furnished, and as to the manner and extent of the supply thereof; and on that day the said Board of Trustees duly adopted and published the ordinance, which is as follows: "Ordinance No. 25. To procure a supply of water for use in cases of fire and other purposes. Whereas, the present supply of water in the town of Woodland is insufficient for the needs of the town in cases of fire or other great necessity, as well as insufficient for the ordinary use of the citizens; and whereas, the necessity for an increased supply of water for such purposes is urgent; and whereas, J. W. Peek, the proprietor of the present water works in said town, has signified his willingness to provide a sufficient supply of water for such purposes, and to furnish all water required in cases of fire free of charge, in consideration of the grant hereinafter contained; now, therefore,

"*Be it ordained by the Board of Trustees of the Town of Woodland:* Section 1. There is hereby granted to J. W. Peek, his associates and assigns, the exclusive right for the period of ten years from the date of the adoption of this ordinance to lay down and maintain main and branch pipes for the purpose of supplying said town and its inhabitants with pure fresh water, in any and all of the streets and alleys in said town in which there are at present main or branch pipes, from the water works of said Peek, or which are at present supplied with water from said water works; and also the right, but not exclusive, to lay down and maintain main and branch pipes for said purpose in any and all of the streets and alleys in said town not at present supplied with water from said water works.

"Section 2. Within eighty days from the date of the adoption of this ordinance the said J. W. Peek, his associates or assigns, shall lay down a new main pipe not less than seven (7) inches in internal diameter from the said present water works, near the corner of Main and Fourth streets, in said town, and extending westerly through Main street to the intersection of Main and First streets, and shall connect the same with all branch pipes leading from Main street within said distance, including the branch mains leading northerly and southerly through First street.

"Section 3. The said J. W. Peek, his associates and as-

signs, shall at all times within the period of said ten years, furnish water to said town for use in case of fire, at all points to which such water service does or may extend, to the extent of the full capacity of the said water works, without any charge or compensation whatever, and in preference to, and, if necessary, to the exclusion of all other customers whatever.

"Section 4. The rates to be charged and collected by said J. W. Peek, his associates or assigns, for furnishing water to said town and its inhabitants for domestic and other purposes, except for use in case of fire, shall be the same as are now charged and received by said J. W. Peek for such services, until the Board of Trustees of said town shall alter or change said rates, or shall establish new rates therefor.

"Section 5. The Board of Trustees of said town shall have the right at all times to regulate the mode and manner of laying such pipes within the streets, alleys, and other public places of said town, and to make reasonable rules and regulations governing the supply and use of water, so as to secure a sufficient supply and to prevent unnecessary waste thereof; and the ordinances heretofore adopted on said subjects shall remain in force until altered or repealed.

"Section 6. Nothing in this ordinance contained shall be so construed as to take away or impair the right of said town, through its proper authorities, to establish and regulate the rates to be charged and received by the proprietors of said water works for furnishing water to said town and the inhabitants thereof, as now or hereafter to be provided by law; nor the right of said town to acquire by purchase or condemnation the title to said water works and franchise, in the manner now or hereafter to be provided by law.

"Section 7. Within three days after the date of the adoption of this ordinance, the said J. W. Peek shall file with the Town Clerk his written agreement, under his hand and seal, to accept and abide by the grant and conditions in this ordinance contained; and in case of a failure to file such agreement within said time, or to lay down and connect the new main herein provided for within the time herein allowed, the grant herein contained shall become and remain wholly null and void.

"Section 8. Nothing in this ordinance contained shall be

so construed as to prevent the Board of Trustees of said town from granting to any person or corporation the right to supply water to any portion of the town in which no exclusive right is granted by this ordinance, and, for that purpose only, to grant to such person or corporation the right to lay main pipes along or across any street in which said Peek, his associates or assigns, has such exclusive right."

That the said Peek accepted of the conditions and grant in the last mentioned ordinance contained, and on the tenth of December, 1879, completed the work of laying down and connecting the new main pipes referred to in section two of the ordinance. All the conditions and provisions of the ordinance except as to the additional supply and the furnishing of water free in case of fire, were disadvantageous to the town and its inhabitants. On the twenty-third day of April, 1880, the Board of Trustees ordered a further extension of the pipes, and Peek complied with the order. That the supply of water from the works of Peek, his associates or assigns, has at all times been either inadequate or not sufficiently extended to meet all the demands of the town or its inhabitants. That the town has never owned or controlled any public works for supplying the town and its inhabitants with water.

In the answer of the defendants it was alleged and found by the Court substantially, as follows: That on the tenth day of October, 1879, the defendants being desirous of laying down pipes in all of the public streets and alleys, and of supplying the town and its inhabitants with water, presented to the Board of Trustees a memorial and draft of ordinance granting the right to defendants, which memorial and ordinance were rejected. Thereupon the defendants presented to the Board of Trustees and asked the adoption of an ordinance granting to them the right to lay down pipes and conduct water through the streets for their individual use. This was also denied. On the seventeenth of October, 1879, the defendants asked of the Trustees the right to lay down and maintain pipes, and to sell water in that portion of the town wherein no exclusive right had been granted to J. W. Peek, but the Trustees again refused to grant their request. On January 16, 1880, a petition was presented by the defendants to the Board of Trustees, suggesting that they, the defendants,

were ready to proceed to use the public streets in laying down water pipes, etc., and requesting the Board to adopt proper regulations for the use of the streets by persons and corporations supplying the town and its inhabitants with water. This the Board did, and adopted an ordinance to that effect on the second day of February, 1880, but on the twenty-seventh day of March, 1880, the Board repealed this ordinance.

On the fourteenth day of March, A. D. 1880, the defendants served on the Town Marshal of said town a notice in writing that the defendants would commence excavating Main street at a point near its junction with Fourth street, in the town of Woodland, for the purpose of laying pipes to furnish said town and its inhabitants with water, on the fifteenth day of March, A. D. 1880, at the hour of nine o'clock, A. M., at which time and place said Marshal might be present and superintend the same. There has been no other Superintendent of Streets in said town than the Town Marshal.

On the fifteenth day of March, A. D. 1880, the defendants, for the sole purpose of laying down water pipes in the streets and alleys of said town, and of furnishing an adequate supply of pure fresh water to said town and its inhabitants, and in pursuance of said last mentioned notice, commenced making excavations in said streets and alleys, at or near the corner of Main and Fourth streets, and they continued to make such excavations therein, from time to time, for such purpose only, up to the time of the commencement of this action.

At the time of making the first excavations referred to, the Town Marshal was present and gave directions as to where, and the manner in which, said excavations should be made, and the defendants in all respects complied with such directions, but the said Town Marshal was not present at nor did he give any directions in regard to any subsequent excavations made by the defendants. The defendants intend to make other and further excavations in the streets, alleys, and highways of said town, and to lay pipes therein, for the purpose of supplying said town and its inhabitants with water, and they have made excavations and laid water pipes for such purpose in streets in which J. W. Peek, his associates and assigns, had previously and still continue to maintain such

water pipes. The defendants made no excavations in any of the streets, alleys, or highways of said town, except so far as was necessary to enable them to lay down water pipes for the purpose of supplying said town and its inhabitants with water; and all the excavations so made by them were made in the usual and ordinary manner in which works of a like character are made, and there was no interference with the free use of such streets, alleys, and highways by the public as a passage way for themselves and vehicles, except such temporary and unimportant interference as was necessarily incident to the prosecution of such work.

On the twenty-eighth day of February, A. D. 1880, the Board of Trustees of said town, in pursuance of the provisions of Art. xiv. of the Constitution of this State, duly adopted an ordinance fixing the annual rates of compensation to be collected by all persons, companies, and corporations for the use of water supplied to said town, which said ordinance was passed to take effect on the first day of July, A. D. 1880, and said ordinance was in force up to and including the time of the trial of this action.

The Court also found that the defendants have never collected or demanded from said town or its inhabitants, any compensation for any water furnished by them to it or them; but the defendants have furnished water to certain inhabitants of said town for a certain defined consideration, in the amount of which consideration the persons so receiving said water are indebted to defendants, and which constitutes a charge upon such persons so receiving said water, in favor of said defendants.

After the decision of this case in bank, a petition for rehearing was filed, and the same was denied.

*A. L. Hart*, Attorney General, *S. M. Wilson* and *W. B. Treadwell*, for Appellant.

The right to use the public streets of a municipality for the purpose of laying down gas or water pipes is a franchise. (*S. J. G. Co.* v. *January*, 57 Cal. 614; *Reg.* v. *L. G. Co.*, 29 L. J. (M. C.) 118; *Reg.* v. *S. G. C. Co.*, 22 Eng. L. and Eq. 200; *Milhau* v. *Sharp*, 15 Barb. 210; *Smith* v. *M. G. L. Co.*, 12 How. Pr. 189; *Galbreath* v. *Armour*, 4 Bell. App. Cases, 384; Dil-

lon M. Corp. §§ 546, 551, 691, 697; Pol. Code, § 2634; C. C., § 548.) The right to collect rates or compensation for the use of water supplied to any town or the inhabitants thereof, is a franchise, and can not be exercised except by authority of and in the manner prescribed by law. (Const. Cal., Art. xiv., § 2; *Spring V. W. W.* v. *Bryant,* 52 Cal. 140.)

The clause of the Constitution under which defendants claim their authority to act, furnishes no foundation for their claim. That clause is not self-executing, but requires legislation to enforce it. (Cooley Const. Lim., 4th ed., 99, 100, 101; *Myers* v. *English,* 9 Cal. 341; *Lamb* v. *Lane,* 4 Ohio St. 167; *People* v. *Supervisors,* 3 Barb. 332; *People* v. *McRoberts,* 62 Ill. 41.) That clause applies to cities as distinguished from towns, and therefore has no application to this case. (Abbott's New Law Dict., Titles "City" and "Town.")

To recapitulate our argument on the point under consideration we say: That the last clause of Section 19 of Article xi. of the Constitution furnishes no justification for the acts of defendants, and does not, of itself, and without further legislation, authorize such acts: Because a consideration of the language used in view of the subject-matter and the evil to be remedied, viz., the prevention of monopolies, does not require such a construction. Because the right intended to be conferred is a right on the part of the public to receive water freely, and not a right conferred for the private advantage of those furnishing the water; and this clause contains, in itself, no sufficient rule by which that right can be enjoyed or protected. Because, by the terms of that clause, this right is to be exercised only so far as may be necessary to secure the object intended, and no sufficient rule is therein contained by which that necessity can be ascertained. Because Sections 1 and 2 of Article xiv., which are in *pari materia* with the clause under consideration, clearly imply an intention to leave the whole matter subject to the principles laid down, to further legislative action, and clearly require such action before this right can be exercised. Because the clause in question evinces an intention to require further legislation, both to secure the right intended to be granted, and to guard against abuses and evils which must be deemed to have been foreseen by its framers. Because if this clause

is intended to go into full operation of itself, and not as a mere principle or guide for the Legislature, it will not be competent for the Legislature to enact the laws necessary to suppress those evils. Because this clause requires that, in connection with the exercise of the right, the municipality shall enact certain regulations for the protection of the public and third persons; which regulations are to be deemed conditions precedent, and which have not been enacted; and, because the whole Constitution evinces an intention to leave all such matters to be determined by the municipalities whose interests are to be affected, subject to general rules prescribed for their guidance; and this clause evinces no contrary intention.

Section 19 of Article xi. of the Constitution does not apply to towns as contradistinguished from cities. Owing to the unavoidable length to which the discussion on the last point has extended, we shall be compelled in this and the succeeding point to confine ourselves to an exceedingly brief outline of the argument. The Constitution uses the words "city" and "town" in many cases, sometimes together and sometimes apart. Is any distinction intended between the words, and, if so, when can one be construed to include the other ? These words are used together in the following sections: (Art. iv., §§ 22, 30; Art. vi., §§ 1, 11; Art. xi., §§ 6, 9, 10, 11, 12, 13, 14, 16, 17, 18; Art. xiii., § 10; Art. xiv., § 1; Art. xv., § 3, Art. xix., §§ 1, 4.)

The word "city" is used apart from "town" in the following sections: (Art. iv., §§ 25, 31; Art. xi., §§ 7, 8, 19.)

The word "town" is used apart from "city" only in Art. xiv., § 2. Section 31 of Art. iv., although omitting "town," contains the words "or other political corporation;" so that the omission of the word "town" has no significance. In Section 25 of Article iv., the omission of the word "town" is obviously unintentional, while in Sections 7 and 8 of Article xi. it is obviously intentional. There remains only Section 19 of Article xi. and Section 2 of Article xiv. to be construed. The word "town" is a generic word, while a "city" is only a particular kind of "town." Blackstone says, 1 Com. 114: "The word town or vill is, indeed, by the alteration of times and language, now become a generical term, comprehending under

it the several species of cities, boroughs, and common towns. A city is a town incorporated, which is or hath been the see of a bishop. * * * A borough is * * * a town, either corporate or not, that sendeth burgesses to parliament." In Abbott's Law Dictionary, under the title " Town," where is contained a somewhat extended discussion of the subject, we find the following:

"This term is differently used in different parts of the United States, in some regions signifying a civil division of a county, irrespective of incorporation or powers of government, such as is elsewhere called a township; in others, denoting a species of municipality more highly organized than a village, and less so than a city."

In the New England States, and in some others that have borrowed their system, a town is a civil division of a county, possessing certain corporate powers, but of very slight organization, principally characterized by the purely democratic form of its government, there being no representative body. In most of the other States the word signifies an inferior municipal corporation as stated by Abbott; some of those States (e. g. West Virginia) having also what are called "townships," corresponding to the New England "towns." (See Constitution of West Virginia, 1861–63, Art. vii., also Art. vi., § 17.) The former Constitution of this State (Art. iv., § 37) provided for the organization of "cities and incorporated villages," and (Art. xi., § 4) for a "system of county and town governments." The word "town," as there used, had the signification given to it in New England. (Ex parte Wall, 48 Cal. 318.) This provision of the Constitution was never carried out by the Legislature.

On the eleventh day of March, 1850, the Legislature passed an Act for the incorporation of cities (Stats. 1850, 87), and on the twenty-seventh day of March, 1850, an Act for the incorporation of towns. (Stats. 1850, 128.) By the latter Act, and those afterwards substituted for it, a town was an incorporated place of small size, distinguished by having no separate departments of government; the whole government being vested in a Board of Trustees. By the former Act, a city was a larger incorporated place, having the executive, judicial, and legislative departments separate, their powers being vested

respectively in the Mayor, Recorder, and Common Council. By numerous special Acts thereafter passed, particular "cities" and "towns" were incorporated under special charters, the above mentioned distinguishing characteristics existing in all. The same distinction exists in all other States where cities and towns, as municipal corporations, exist. (See the statutes of those States, *passim.*) In this state of things the present Constitution was adopted, in which a new provision (Art. xi., § 6) was made, as follows:

"Corporations for municipal purposes shall not be created by special laws; but the Legislature, by general laws, shall provide for the incorporation, organization and classification, in proportion to population, of cities and towns.   *   *   Cities and towns heretofore organized or incorporated may become organized under such general laws;   *   *   and cities or towns heretofore or hereafter organized   *   *   shall be subject to and controlled by general laws."

Can it be for a moment doubted that the intention here was to distinguish between these two classes of municipal corporations, and to perpetuate the distinction then and before recognized by the laws of the State ? The next section provides for the consolidation of " city " (not " town ") and " county" governments into one government, which is, throughout the Constitution, called a " city and county," and provides that the provisions of the Constitution applicable to " cities," and those applicable to " counties," shall apply to such consolidated government. The next section makes certain provisions for a " city " containing a population of more than one hundred thousand. In all these cases the distinction is obvious. Then follow numerous provisions, some applying to cities and towns, some including all municipal corporations and *quasi* corporations, and some including also counties and townships. But when we reach Section 19 of Article xi. we find two new and extraordinary provisions relating, by their terms, to "cities" only. We may safely assert that, under such circumstances, " towns " are, *prima facie,* excluded. But it is not to be denied that these words are sometimes construed as interchangeable, and it is therefore important to see if there is any rule of construction by which we can be guided in determining whether this omission was intentional. With-

out entering into any discussion of the question, we will assert the rule to be that the word " town " is the generic word, and will be held to . include " city " unless the context requires otherwise ; while the word " city " denotes a particular species, and will not be held to include " town " unless the context demands it.    This is only a special case of the rules, that general words will usually be held to include particulars, but particular words will not usually be extended so as to include general ones, and that technical words will usually be considered as used in the technical rather than in the popular sense.    (*Rafter* v.  *Sullivan*, 13 Abb. Pr. 262; *Peck* v.  *Weddell*, 17 Ohio St. 271; Abbott's Law Dict., titles " City" and " Town." )

Can any reason be shown why the word "city" as used in this section, should be extended so as to include "town" and can not good reasons be given for denying such an interpretation ?    In the first place the care observable throughout the Constitution furnishes strong ground for supposing a deliberate intention.    There can be no possible reason suggested why "county" should be held to be included, yet all the argument made by respondents requires the inclusion of this word as well as that of "town."    The whole scope of both parts of the section shows that it is intended to apply to large, thickly settled, and highly organized places.    To hold that the first clause applies to the smallest municipalities would be to create an almost intolerable hardship in opposition to the express letter of the law; yet, if the last clause is so construed, we must treat the first in the same manner.    In both cases the evil intended to be remedied presses heavily on large places and but slightly on small ones, and therefore the scope of the remedy should be held to be no more than co-extensive with the mischief.

With regard to Section 2 of Art. xiv., respondents call attention to the use of the word "county" in that section, and its omission in Section 1 of the same Article, and say that the Court, in construing Section 1, should insert the word "county."    Here, at least, they have fallen into a grave error. That portion of the section following the word "provided" was offered as an amendment by Mr. Barbour, in the morning session of February 14, 1879.    As offered by him, it contained

the word "county" in every place. (Debates, Vol. 3, 1371.) In the afternon session of the same day, this amendment, before action taken upon it, was amended by its author, by consent, by striking out the word "county" wherever it occurred, and, as so amended, was adopted. (Id. 1372.)

Again, counsel for respondents say that the word "city" should be interpolated into Section 2 of Article xix. In this we heartily agree with them for the following reasons: first, as we have before shown, the word "town" should generally be held to include "city"; second, the context undoubtedly requires its inclusion; and third, because the word was omitted solely through a clerical error. As to this last matter, the facts are these: that section was offered as an amendment by Mr. Herrington, in committee of the whole, January 15, 1879. As offered, it contained the word "city." (Debates, Vol. 2, 1029.) On the debate, it was referred to as including "cities." (See remarks of Messrs. Herrington and Reynolds, id. 1029, 1030.) Before action, the section was again read for information, and then adopted by the committee. As so read and adopted, it contained the word "city." (Id. 1030.) On February 14, 1879, in Convention, the President announced the question as being upon concurrence with the Committee of the Whole in adopting the section. The section was then read and the report concurred in, without debate. As so read and adopted the word "city" was omitted. (Debates, Vol. 3, 1375.) This word, then, was left out solely by the unauthorized act of the Secretary, probably through a mistake of the printer, and the error passed unnoticed.

Counsel for respondents, in their points on file, call attention to certain sections of the Constitution in which the word "city" is used, but not "city and county," and argue that, as those sections have been held to apply to a "city and county," by parity of reasoning "city," in this section, should be held to include "town." But they forget that the reason why it was necessarily so held, was that Section 7 of Art. xi. expressly provides that "the provisions of this Constitution applicable to cities  *  *  *  shall be applicable to such consolidated [*i. e.* city and county] governments." When counsel can show a similar provision with reference to towns, we will admit this to be a case in point.

As to Section 27, Article iv. (with which should be compared Section 6 of the same Article), it will be observed that Assembly, Senatorial, and Congressional Districts are intended to be composed of counties, and the only reason why a city and county is mentioned in that connection is, because such a government does not, by its consolidation, lose its character as a county. Counsel for respondents say truly, that this provision "would not apply literally to San Francisco should it become a city;" to which we may add that it would not so apply either literally or in spirit.

We have thus examined every provision mentioned, and have, as we believe, shown that only one change (viz., the insertion of "city" in § 2, Art. xiv.) is necessary to make the Constitution entirely harmonious; and that this change is not only warranted by both the letter and the spirit of that section, but is in conformity with the actual intention of the Convention, which only failed of its intended form of expression through a clerical error. In this state of the case we respectfully submit that, to adopt the construction contended for by respondents upon no better reason than those advanced by them, would be an extreme case of judicial legislation. The construction to be given to a Constitution on such a question is somewhat different from that adopted in the case of a statute. The Constitution purports to cover the entire ground of government, and when its provisions are so drawn that an intention is manifest to distinguish between certain cognate terms, that intention must be presumed to have existed throughout, unless strong and grave reasons are shown to the contrary. The Courts can not say that because such a provision might well have been made to apply to cases not within its terms, therefore it was intended so to apply; but, before adopting such construction, it is necessary to show that it is inconceivable or, at any rate, highly improbable that it was not so intended. As we have shown, a clear and deliberate intention is manifested in other sections to distinguish between these words; and, inasmuch as no other section has been pointed out in which the word "city," standing alone, can, with the slightest plausibility, be claimed to include "town," reasons of a nature very different to and much stronger than those advanced by respondents will be required

to overthrow the almost conclusive presumption thus created.

Woodland is a "town" both in fact and in law. (Stats. 1873–4, 557.) Section 4356 of the Political Code, cited by respondents, has no application. (Pol. Code, §§ 19, 4478, 4479; *Ex parte Simpson*, 47 Cal. 128; *Babcock* v. *Goodrich*, 47 id. 488.)

The constitutional provision relied on does not, therefore, furnish any justification for defendants' acts. (*Rafter* v. *Sullivan*, 13 Abb. Pr. 262; *Peck* v. *Weddell*, 17 Ohio St. 271.)

Under the facts of this case the town of Woodland, owning an interest in the Peek water works, and having the entire control of them, is within the exception contained in that clause, which, for that reason, does not apply here.

*C. P. Sprague, Jo. Craig,* and *Rhodes & Barstow,* for Respondents.

The words of the clause of that section which are involved in this controversy are: "In any city where there are no public works owned and controlled by the municipality, for supplying the same with water or artificial light, any individual or company * * * shall, under the direction of the Superintendent of Streets, or other officer in control thereof, and under such general regulations as the municipality may prescribe for damages and indemnity for damages, have the privilege of using the public streets and thoroughfares thereof, and of laying down pipes and conduits therein," etc.

Our position is that the word "city" means, in that connection, "municipality;" that the purpose of that clause was to give to an individual or corporation, the right to introduce water into a municipality which does not own and control public works of its own, by which the municipality and its inhabitants are supplied with water. And we contend that there is nothing in the Constitution which leads to the conclusion that the intent was to limit this right to cities alone, excluding cities and counties, towns and municipalities of any other name or description. The word "city" is used in every instance in that section in its generic sense. Blackstone (1 Com. 114) says that "a city is a town incorporated." (See

Bouv. Law Dic.; Webster's Dic.)    See also *Mason* v. *Finch*, 2 Scam. 223; *Burke* v. *Monroe Co.*, 77 Ill. 610, in which the word "city" was held to include a "town."    The Political Code, § 4356, defines a city, and Woodland comes within the definition.    (*Winbigler* v. *Los Angeles*, 45 Cal. 38.)

The Court has, it is to be presumed, often had occasion to notice that the Constitution has not always employed the same word or words to express the same idea, but that, on the contrary, it has, apparently, studiously avoided the repetition of words and phrases in the same or different sections, where there is not a shade of difference in the idea.    Art. vi., Sec. 4, confers on this Court appellate jurisdiction "in all cases at law which involve the title or possession of real estate," while Section 5 confers upon the Superior Court original jurisdiction "in all cases at law which involve the title or possession of real property."    By the same sections, jurisdiction is given to this Court "in cases of forcible entry and detainer," and to the Superior Court, jurisdiction "of actions of forcible entry and detainer."    The Justices of this Court are to be elected "at the general State elections at the times and places at which State officers are elected" (Sec. 3); and Judges of the Superior Courts are to be elected "at the general State election" (Sec. 6).    Evidently, the two sections refer to the same elections— the general elections.

The words "law," "act," "bill," and sometimes "legislation," are used synonymously, and as having the sense of "law." And so it will be found that, in many instances, the terms "city," "city and county," "town," "municipality," and "municipal corporation" have been employed in such sense that one of those terms will include the meaning of one or more, and sometimes all of the other terms.    These several terms occur, either separately or combined, in the following sections: Art. iv., §§ 22, 25, 27, 30, 31, 32; Art. vi., §§ 1, 6, 7, 11; Art. ix., § 3; Art. xi., §§ 5–10, 11, 12, 14, 16–19; Art. xiii., §§ 4, 9, 10; Art. xiv., §§ 1, 2; Art. xv., § 3; Art. xix., §§ 1, 3, 4; Art. xxii., §§ 6, 8.

It is provided by Art. xi., § 8, that "any city containing a population of more than one hundred thousand inhabitants may frame a charter for its own government," etc.    The words of the provision are not "any city, or city and county," and

yet there can be no doubt that it was intended that the word "city" should embrace "city and county." The City and County of San Francisco, in Art. xi., §§ 6, 7, and perhaps in other portions of the Constitution, is recognized as an existing municipality. This Court, in upholding the election of the Board of Freeholders in San Francisco (see *People* v. *Hoge*, 55 Cal. 612), necessarily affirmed that the term "city" in that section comprehended "city and county." In the first portion of the section involved in this point (Art. ii., § 19), provision is made in respect to assessments, etc., for improvements in "any city," and this Court, in *McDonald* v. *Patterson*, 54 Cal. 245, held that the provision was inapplicable to the "city and county" of San Francisco.

The provisions in relation to the formation of congressional districts (Art. iv., § 27) mentions "county, or city and county," but not city; and it would not apply literally to San Francisco should it become a city. The power granted by Art. xi., § 11, to make police and sanitary regulations, is not expressly extended to a city and county. Nor does the provision of Art. xi., § 18, in respect to incurring indebtedness, extend expressly to cities and counties. Art. iv., § 25, Sub. 28, prohibits special laws creating offices "in counties, cities, cities and counties, townships, election or school districts," and we think there would be no hesitation in saying that the provision was intended to extend to towns also.

It will be noticed that in the several instances above cited, by reference to article and section, the words differ, though the idea intended to be conveyed may be identical. It is worthy of attention that Art. xiv., § 1, provides that the rates for water supplied to any "city and county, or city or town, or the inhabitants thereof," shall be fixed, etc., and that § 2 of same Article provides that the right to collect rates, etc., for water supplied to any "county, city and county, or town, or the inhabitants thereof," is a franchise, etc. The omission of "county" in the first instance, and of "city" in the second, would be very significant were these several clauses to receive a literal reading; but there is no manner of doubt that the Court will, when the question shall be presented, decide that those clauses are to be read as they would be, were the words "county" and "city" inserted in the respective clauses.

In the second section the word "town" may properly be construed as comprehending a city, for it would be absurd to contend that the intent of the instrument was to declare that the right to collect rates for water supplied to a town was, but to a city was not, a franchise. It will be noticed that in each section the word "town" is employed, and it is obvious that it was intended that water might be introduced for the use of towns and their inhabitants, not only by the towns, but by individuals and corporations. It is equally obvious, that the Constitution did not intend to provide that the towns might fix the rates for water supplied by themselves as municipalities; nor did it intend to declare that a right exercised by towns to collect rates for water supplied by themselves, should be deemed a franchise. By the first section, the "governing body" of the town is required to fix the rates in respect to that which, in the second section, is declared to be a franchise. The last clause of the first section places the matter beyond question, for it is there declared that, for the collection of rates, otherwise than as so established by the town, the water works shall be forfeited to the town. No one, we think, will contend that a right exercised by a town to collect rates for water supplied by itself is, in the sense of the second section, a franchise; nor that the public water works of a town should be forfeited to itself, because of its collection of rates otherwise than is provided by the Constitution.

Reading those two sections of Art. xiv. in connection with Sec. 19, Art. xi., the conclusion is inevitable, that the intent of the instrument is to secure to individuals and companies the right to introduce water into the same classes of municipalities that have a right to fix the rates for its use; and that it intends to declare that the right to collect the rates upon water so introduced is a franchise; that it does not intend to limit this right to cities, but to grant it in respect to cities and counties, and towns as well; and that it employs the term city as synonymous with the word employed in that section as its exact equivalent—"municipality." By no other construction can the several sections above referred to be brought into harmony.

The provision is, that "In any city where there are no pub-

lic works owned and controlled by the municipality, for sup-
plying the same with water or artificial light, any individual
or company   *   *   *   shall, under the direction of the Super-
intendent of Streets,   *   *   *   and under such general reg-
ulations as the municipality may prescribe for damages and
indemnity for damages, have the privilege of using the pub-
lic streets and thoroughfares thereof and laying down pipes,"
etc.   The right thus given does not require any legislation
for its security, and certainly none for its creation.   The
right is as fully and completely granted and secured by the
Constitution, as is the right to the free exercise of religious
profession, or liberty of speech, or trial by jury, or mechanic's
lien.   It is not claimed that the right to introduce water is,
in its exercise, free from all conditions or restrictions.   In
that respect it is like the other rights above mentioned.   Laws
may be passed providing for the impaneling of juries, or the
securing and enforcement of mechanics' liens.   And so here.
The water pipes may be laid down under the direction of the
Superintendent of Streets and under municipal regulations
for damages.   But the right to a trial by jury is not depend-
ent upon the question whether an effectual law has been
passed for the impaneling of juries.   The lien of the mechanic
for labor performed, does not depend upon the passage of a
law for its enforcement.   Should the municipality fail or re-
fuse to prescribe general regulations for damages that might
be occasioned by the laying down of water pipes, the right
would not cease; but the purpose of the Constitution is to
secure that right, and to subject it, in its exercise, to the op-
eration of such general regulations.   The Constitution does
not declare that the individual or company may lay down
water pipes, if such general regulations shall have been pre-
scribed.   The existence of those regulations is not a condition
precedent.   If there be no Superintendent of Streets or other
officer in charge thereof, that fact can not impair the right in
question.   Any person may travel upon a turnpike, but he is
subject to reasonable rules and regulations made by the com-
pany for the maintenance and protection of the turnpike.
His right to travel on the turnpike is not dependent upon the
existence of such rules or regulations.   If the municipality,
by refusing to make, or by repealing such regulations, or by

failing or refusing to give the control of the streets to any officer, could prevent the exercise of the right to introduce water; or it could effectually destroy all competition, if the municipality was disposed to favor a company which had already laid down its water pipes. The purpose of securing competition in supplying water, in all towns which do not own and control public water works, is manifest from the several provisions of the Constitution.

It is difficult, if not impossible, to give an accurate definition of a self-executing Constitutional provision; but where the provision clearly confers a right, it is none the less self-executing because there is also a provision that the right is to be exercised in conformity with the rules or regulations that some authority may make. The right granted to introduce water is not dependent upon the exercise by the municipality of its authority to make regulations in respect to damages that may occur in the laying down of the water pipes. Had that been the intent, the Constitution would have declared that municipalities might permit the introduction of water, under such rules and regulations as it might prescribe. The first portion of this section was, in *McDonald* v. *Patterson*, 54 Cal. 245, respecting street improvements, held to be self-executing. There was the same ruling in *People* v. *Hoge*, 55 id. 612, involving the election of a Board of Freeholders. (See also, *People* v. *Bd. of Education*, 55 id. 331; *Weber* v. *Supervisors*, 8 P. C. L. J. 493; *Barton* v. *Kalloch*, 6 id. 330.)

It will be noticed—and it is a matter of great significance— that the plaintiffs allege in their complaint that the town refused and still refuses to make or prescribe any regulations for damages, or indemnity for damages, for the use of the street in laying down water pipes. The Trustees evidently were of the opinion that by failing to perform their duty—by neglecting to keep a condition subsequent—they could defeat the constitutional grant of the right in question.

The only possible ground upon which it can be pretended that the town owned or controlled any water works for supplying the town or its inhabitants, is based on Exhibits "A" and "B," by which the town, for four hundred dollars, purchased from Peek "four undivided sevenths of that certain pump, used by the party of the first part in raising water at

his water works in said town." The indenture contains this
further clause: "And for the same consideration, the party of
the first part grants to the party of the second part, the use
of said system of water works in connection with said pump,
in the manner and to the extent of the covenants hereinafter
contained." Then follow covenants to the effect that Peek
shall run the pump and water works; that he shall supply
water for municipal uses where his pipes may run; that the
town may make regulations respecting the use of water, so as
to supply water in cases of fire and other public necessity;
and that Peek shall receive for water supplied for the last
mentioned purposes, only a reasonable compensation.

The ownership of four sevenths of a pump does not con-
stitute ownership of the works to which the pump may be
attached. That is all the ownership that the town has in the
water works.

The town does not control the works, but they are con-
trolled by Peek, subject, of course, to municipal regulation, as
are all water works which supply municipalities or their in-
habitants.

They are not public works, for the reason above given,
and because, by the terms of the indenture, Peek is to run and
manage them.

The covenant to furnish water for municipal uses—in
cases of fire and other public necessity—is no more than is
required by all companies furnishing water to towns and their
inhabitants. (C. C. § 549; *Spring Valley W. W.* v. *San Fran-
cisco,* 52 Cal. 111.)

That the works are not public, and are not owned and
controlled by the town, is apparent from the fact that Peek
is to be paid a "reasonable compensation" for the water fur-
nished for fires and other public necessity.

Ross, J.:

The gist of the very able argument of appellant's counsel is
that, under the provisions of the present Constitution, no com-
pany or individual possesses the right to lay pipes in the streets
of any incorporated city or town of the State for the purpose
of supplying the inhabitants thereof with fresh water, until

the Legislature has prescribed the terms and conditions under which all of this may be done.

Prior to the adoption of the present Constitution, the Legislature had that power. It could delegate to the municipal government, or itself exercise, the power of prescribing the terms and conditions upon which pipes might be laid and water furnished. The privilege lay only in grant from the Legislature, which might be, and which experience showed had been, abused. As with many others, in dealing with this subject, the framers of the Constitution of 1879, determined to, and did make many radical changes from the pre-existing condition of things. They enacted several provisions in relation to the subject to be considered, all of which must be taken and read together, and to each of which effect must be given. Those provisions are:

"Article xi., Section 19.  *  *  *  In any city where there are no public works owned and controlled by the municipality for supplying the same with water or artificial light, any individual, or any company duly incorporated for such purpose under and by authority of the laws of this State, shall, under the direction of the Superintendent of Streets, or other officer in control thereof, and under such general regulations as the municipality may prescribe for damages and indemnity for damages, have the privilege of using the public streets and thoroughfares thereof, and of laying down pipes and conduits therein, and connections therewith, so far as may be necessary for introducing into and supplying such city and its inhabitants either with gas light or other illuminating light, or with fresh water for domestic and all other purposes, upon the condition that the municipal government shall have the right to regulate the charges thereof.

"Article xiv., Section 1. The use of all water now appropriated, or that may hereafter be appropriated, for sale, rental or distribution, is hereby declared to be a public use, and subject to the regulation and control of the State, in the manner to be prescribed by law; *provided,* that the rates or compensation to be collected by any person, company, or corporation in this State for the use of water supplied to any city and county, or city or town, or the inhabitants thereof, shall be fixed, annually, by the Board of Supervisors, or city and

county, or City or Town Council, or other governing body of such city and county, or city or town, by ordinance or otherwise, in the manner that other ordinances or legislative Acts or resolutions are passed by such body, and shall continue in force for one year and no longer. Such ordinances or resolutions shall be passed in the month of February of each year, and take effect on the first day of July, thereafter. Any Board or body failing to pass the necessary ordinances or resolutions fixing water rates, where necessary, within such time, shall be subject to peremptory process to compel action, at the suit of any party interested, and shall be liable to such further processes and penalties as the Legislature may prescribe. Any person, company, or corporation collecting water rates in any city and county, or city or town, in this State, otherwise than as so established, shall forfeit the franchises and water works of such person, company or corporation, to the city and county, or city or town, where the same are collected, for the public use.

"Art. xiv., Sec. 2. The right to collect rates, or compensation, for the use of water supplied to any county, city and county, or town, or the inhabitants thereof, is a franchise, and can not be exercised except by authority of and in the manner prescribed by law."

Now, these provisions, as well as all other provisions of the Constitution, must receive a practical common-sense construction. They must be considered with reference to the prior state of the law, and with reference to the mischief intended to be remedied by the change. If the framers of the instrument had intended to leave the entire matter where it previously rested—in the hands of the Legislature—they would have said so in appropriate language. But it is perfectly evident that there were some things in regard to the subject that they were unwilling to trust to the Legislature. It was not with the view of "liberating the great public uses of water and gas from legislative control, and making them independent of the State," that the changes were made, but, on the contrary, it was intended, in certain enumerated respects, to lay a stronger hand upon them than that of the Legislature—to wit, the hand of the Constitution itself. So it was, that by Section 1 of Art. xiv., the use of all water

heretofore or hereafter appropriated for sale, rental, or distribution, is expressly declared to be a public use. It is not left to the Legislature, as formerly, to say whether it shall be a public use or not, but the Constitution itself declares it to be such, and then makes the use subject to the regulation and control of the State; that is to say, of the Legislature, in the manner to be prescribed by law, to wit, by statute law, subject however, to certain enumerated provisions contained in the Constitution itself; among them, to provisions in respect to the rates or compensation to be collected by any person, company, or corporation, for the use of water supplied to any city and county, or city or town, or the inhabitants thereof. Such rates or compensation, the Constitution expressly declares shall be fixed in a certain specified manner, at a certain time, and by a certain body; and the body failing to do so is expressly made "subject to peremptory process to compel action, at the suit of any party interested, and liable to such further processes and penalties as the Legislature may prescribe."

But by the next section of the same article of the Constitution, the right to collect the rates or compensation so established is declared to be a franchise, "and can not be exercised except by authority and in the manner prescribed by law"—that is, by statute law. But, of course, the Constitution contemplated the enacting by the Legislature, where they did not exist, of all laws necessary to give effect to its commands, and that none should be passed in contravention of its provisions. When, therefore, the Constitution fixed the manner of establishing the rates or compensation to be charged for water furnished to any city and county, or city or town, or the inhabitants thereof, and further declared that the right to collect the rates or compensation so established is a franchise, and can not be exercised except by authority of and in the manner prescribed by law, it was the duty of the Legislature, if they did not exist, to provide the needful laws. But the failure of the Legislature to do so, if failure there was, could not prevent the establishment of the rates or compensation specifically required to be established by the Constitution. And so with respect to the privilege granted by Section 19 of Article xi. of the Constitution of laying pipes in

the public streets and thoroughfares of any city (where there are no public works owned and controlled by the municipality), so far as may be necessary for introducing into and supplying such city and its inhabitants with gas or other illuminating light or with fresh water. That privilege is expressly granted by the section of the Constitution cited, subject to the direction of the Superintendent of Streets or other officer in control thereof, and under such general regulation as the municipality may prescribe for damages and indemnity for damages, and upon the condition that the municipal government shall have the right to regulate the charges thereof. The purpose of this provision was thus explained by the gentleman at whose instance it was inserted in, and became a part of the Constitution: "It gives to any individual, as well as to any incorporated company, the right to the use of the streets for laying down pipes for the supply of gas and water, or either. I think that the objection that was taken to the section as formerly introduced was well taken—that it should not be limited to corporations; that any individual, for the public good, should have the right to use the streets for laying down pipes for supplying water or gas. It is in the public interest that it should be conceded, and it prevents monopoly in any sense. It also provides that the city authorities may make a regulation in relation to damages and indemnity; that is, that they may make a regulation requiring all work to be done under the supervision of the Superintendent of Streets, and also, if any damage should be likely to occur, they may, by security or otherwise, guard against it.   *   *   *   Then it provides that the city and county shall have the right to regulate the price to be paid by the inhabitants for the gas and for the water. This is also a necessary regulation, I think, against the abuses of monopoly. Now, in Los Angeles we have a gas company with a monopoly for twenty years, and several parties have endeavored to get the privilege for laying down pipes in the streets for the purpose of supplying the city and competing with this company, but the company has always had sufficient influence in the municipal government to prevent this being done, and this company has a prospect of exclusive right for twenty years to come. Now, I submit to the Convention that this is a great

abuse of public authority and that it ought to be. corrected. We have, also, there, a water company that claims the monopoly, and the private individual who did succeed in laying down pipes and is to some extent supplying the city with water in opposition to the monopoly, is threatened constantly with suits and injunctions, and if this thing goes on we will have a monopoly, not only of water and gas, but of all domestic necessaries, and then we will have some company peddling it by the tin cupful. It is time this abuse was corrected, and, therefore, I offer this amendment "—which " amendment " is the clause of the Constitution now under consideration. (Debates Cons. Con., Vol. 2, p. 1075.)

We have quoted at length the remarks accompanying the introduction of the provision, for the purpose of showing that the members of the Constitutional Convention had distinctly put before them the evils intended to be remedied, and the purpose of the enactment; and thus informed, they adopted it. Yet we are asked to hold, in effect, that after all, the whole matter rests where it did before—with the Legislature. This we can not do. Nor, under our construction of the provisions in question, do we discover any indication of a return "to the doctrine of the *Dartmouth College Case,*" nor any fostering of monopolies, but, on the contrary, the most manifest intent to *prevent* them as respects the important subjects treated of— gas and water. By the adoption of those provisions the people asserted their unwillingness to leave the entire subject in the hands of the Legislature, and in the particulars already indicated, declared the rule that should govern, in the organic law itself, and gave to the Legislature the "regulation and control" in all other respects.

It is also claimed on the part of the appellant that the word "city" used in Section 19 of Art. xi., *supra,* does not include towns, and therefore does apply to the town of Woodland. But in this position, also, we are unable to agree with the learned counsel for appellant. As already said, all of the provisions of the Constitution above quoted must be taken and read together. Indeed, this is conceded by counsel. Now, Section 1 of Art. xiv. provides that the rates or compensation to be collected by *any person, company, or corporation* in this State for the use of water supplied to any *city and*

*county, or city or town,* or the inhabitants thereof, shall be fixed, etc.

Is it not too plain for argument that the rates or compensation required to be fixed by this provision of the Constitution are the rates or compensation to be collected by the individual or corporation introducing water "in any city where there are no public works owned and controlled by the municipality," as provided by Section 19 of Art. xi?

That the provision of the Constitution requiring the rates or compensation to be fixed has no application to water furnished by a municipality itself, is conclusively shown by the concluding clause of the provision, which is in these words: "Any person, company, or corporation, collecting water rates in any city and county, or city or town in this State, otherwise than as so established, shall forfeit the franchises and water works of such person, company, or corporation to the city and county, or city or town where the same are collected, for the public use." It would be absurd to say that the Constitution meant to provide for the forfeiting of the water works of a city and county, or city or town to itself. We think it clear that the rates or compensation required to be fixed by Section 1 of Article xiv. are the rates or compensation to be collected for water authorized to be introduced by Section 19 of Article xi., and that the latter section secures to individuals and to corporations duly incorporated for such purpose under and by authority of the laws of the State, the right to introduce water into the classes of municipalities that by Section 19 of Article xi. are given the right to fix the rates or compensation for its use—that is to say, cities, towns, and cities and counties. This construction brings the several sections into harmony, and gives effect to the evident purpose of the Constitution.

Other points are made which need not be noticed in detail.

Our conclusion is that the judgment and order ought to be affirmed, and it is so ordered.

MORRISON, C. J., and MYRICK and SHARPSTEIN, JJ., concurred.

THORNTON, McKINSTRY, and McKEE, JJ., dissented.