May Term, 1857.

THE STATE
v.
SICKLER.

---

THE STATE on the relation of PARISH GROVE TOWN-
SHIP *v.* SICKLER.

Suit by a township to recover possession of certain land. Answer, that on the 12th of *November,* 1841, *Milton Jennings,* school commissioner of *Benton* county, sold the land to one *Abner Evans,* who paid 50 dollars, one-fourth of the purchase-money, and received a certificate of purchase, which he assigned, &c., and which, after other assignments, was duly assigned to defendant, and under it he claims title. The answer then sets forth the following act: "An act to legalize the acts of the school commissioner of *Benton* county. Approved *January* 13, 1844. Section 1. *Be it enacted,* &c. That the sale of the following described lands, * * * * * made by *Milton Jennings,* then acting as school commissioner of the county of *Benton,* is hereby declared legal, and that said *Abner Evans,* purchaser of said lands, shall be entitled to all the benefits of said purchase, as if the said *Jennings* had, at that time, been school commissioner of the county of *Benton.* Sec. 2. This act to take effect and be in force from and after its passage." It is then averred that defendant had fully paid the interest on the unpaid purchase-money, annually, in advance, and that the last payment

May Term,
1857.

THE STATE
v.
SICKLER.

was made *March 3*, 1856; that the advance payment of 50 dollars, and the interest for fourteen years on 150 dollars, the unpaid balance, had been paid over to the officers having charge of the school fund, and the interest thereon had been used in the support of schools in the township, wherefore defendant claimed that the sale had been ratified. Demurrer overruled. Reply, that the land was sold by the school commissioner without authority of law; that at the time of the sale, there were not fifteen resident, qualified voters in the congressional township; that no vote authorizing such sale was reported to the school commissioner; that no division of the section into lots was made, nor no minimum price affixed. The ratification was also denied, generally. Demurrer sustained. The act of *February* 15, 1841, was relied upon. *Held*, 1. That it was the intention of the legislature to legalize the sale to *Evans*, by curing all defects, whether found in the acts of the commissioner, or in his official tenure. 2. That the legislature had the power to do so.

*Tuesday,*
*May* 26.

APPEAL from the *Benton* Circuit Court.

DAVISON, J.—The state, on the relation of *Parish Grove Township*, in *Benton* county, brought an action against *Jacob Sickler*, to recover the south-west quarter of section 16, in congressional township number 24, north of range 8 west, for the benefit of common schools.

The complaint alleges that *Sickler*, the defendant, is wrongfully in the possession of said quarter-section, and demands judgment, &c. The defendant answered, that, on the 12th of *November*, 1841, *Milton Jennings*, the school commissioner of *Benton* county, sold the land in contest to one *Abner Evans*, who paid 50 dollars, being one-fourth of the purchase-money, in advance, and received a certificate of purchase, which he assigned to one *Charles Lewis*, and after various other assignments, it was duly assigned to the defendant, and under it he claims title. The certificate, with its several assignments, are set out in the answer. It is further alleged that the legislature, on the 13th of *January*, 1844, passed "an act to legalize the acts of the school commissioner of *Benton* county," which is as follows:

"SECTION 1. *Be it enacted*, &c., That the sale of the following described lands, to-wit, the north-west quarter of section sixteen, township twenty-four, range eight, and the south-west quarter of the same section, made by *Milton Jennings*, then acting as school commissioner of the county

of *Benton*, is hereby declared legal, and that *Abner Evans*, purchaser of said lands, shall be entitled to all the benefits of said purchase, as if the said *Jennings* had, at that time, been school commissioner of the county of *Benton*.

" SEC. 2. This act to take effect and be in force from and after its passage." Local Laws of 1844, p. 151.

The answer then avers, that the defendant had fully paid the interest on all the unpaid purchase-money, annually, in advance, and that the last payment of 10 dollars and 50 cents was made, *March* 3, 1856, to the auditor of the county; that the advance payment of 50 dollars, and the interest on 150 dollars, the unpaid purchase-money, for fourteen years, had been paid over to the officers having charge of the school funds, and the interest on all the money had been disbursed and used in the support of schools in said congressional township—wherefore the defendant claimed that the sale had been ratified.

To this answer the plaintiff demurred, but her demurrer was overruled, and thereupon she replied, that the land was sold by the school commissioner without authority of law; that at the time of the sale there were not fifteen resident, qualified voters in said congressional township; that no vote authorizing such sale was reported to the school commissioner; that no division of the section into lots was made, and no minimum price affixed as required by law· The reply also denies, generally, the ratification of the sale by the inhabitants of the township, &c.

Demurrer to the reply sustained, and judgment given for the defendant.

The act of congress enabling the people of the *Indiana* territory to form a constitution, &c., declares, " That the section 16 in every township, &c., shall be granted to the inhabitants of such township for the use of common schools." 1 R. S. p. 93. And by a subsequent enactment, approved *May* 24, 1828, the state of *Indiana* was authorized to sell and convey in fee simple, all and any part of the land reserved and appropriated by congress for the use of schools within said state: " *Provided*, said land, or any part thereof, shall in no case be sold without the consent

of the inhabitants of such township or district, to be obtained in such manner as the legislature of said state shall direct." 2 U. S. Land Laws, p. 227. Pursuant to this act of congress, the legislature of *Indiana* enacted as follows:

"SEC. 5. There shall be no sale of the congressional school lands in any township unless there are fifteen qualified voters resident therein; nor unless a majority of the voters of the township vote in favor of such sale.

"SEC. 6. If a majority vote in favor of a sale, the judges and clerks of the election shall, within seven days thereafter, file a certificate thereof with the school commissioner, in which shall be included the number of votes for and against said sale; and it is hereby made the duty of such commissioner to record in the books of his office all such certificates.

"SEC. 7. The trustees of such township shall thereupon divide the lands so voted to be sold, into such lots as will best suit purchasers, and insure the best price, fixing a minimum price to each lot, not less than one dollar and twenty-five cents per acre, below which it shall not be sold. * * * * * *

"SEC. 8. The clerk of the trustees shall forthwith certify such appraisal of lots, and also such divisions, if made, to the commissioner, who shall record the same at length in his books.

"SEC. 9. The commissioner shall thereupon proceed to sell such lots separately, at public auction." Acts of 1841, p. 55.

The demurrer to the reply admits that the inhabitants of the township did not, in the mode pointed out by the legislature, consent to the sale to *Evans*. And without such consent, it must be conceded that the appellee has no title, unless the sale has been ratified by the act of 1844, set forth in the answer, or by the inhabitants themselves. Here the sale was made, one-fourth of the purchase-money was paid in advance, and interest on the whole of it regularly collected and used in the township in support of common schools. Now, in view of these facts, had the legislature the power to ratify the proceedings of the school

commissioner? Under the constitution of 1816, this Court has decided that the legislature could, by special retroactive enactment, legalize a sale of real estate made under an order of the Probate Court without appraisement, though the law authorizing the sale specifically required such appraisement. *Davis* v. *The State Bank*, 7 Ind. R. 316. This decision is sustained by authority, and, in our opinion, involves a principle applicable to the point under consideration. *Beach* v. *Walker*, 6 Conn. R. 190.—*Watson* v. *Mercer*, 8 Pet. 88.—*Carpenter* v. *Pennsylvania*, 17 How. U. S. 456.—*Webb* v. *Den*, id. 576.—9 Mass. R. 359.—7 Blackf. 474.—8 id. 10. True, a statute the effect of which is to divest vested rights, or to violate contracts, would be in conflict with the constitution; but these characteristics do not apply to the act of 1844. It simply confirms a sale which, though not made in the mode prescribed by the statute, had been acquiesced in, and recognized as valid by those who owned the property when it was sold. In this instance, the inhabitants themselves having assented that their property should remain disposed of in a manner variant from that pointed out by the general statute, there seems to be no valid reason why the legislature could not, by special enactment, legalize such assent and disposal.

But it is said that the act in question does not amount to a confirmation of the sale; that the legislature intended merely to recognize *Jennings* as school commissioner, in the sale of the land in controversy, leaving his acts to be tested by the general law relative to the sale of school lands. Its title is, " An act to legalize the acts of the school commissioner of *Benton* county." This seems to indicate a legislative belief that there was, at the time of the sale, a school commissioner in that county; but that some of his acts were illegal, which it was proper to legalize. The act itself says, "that the sale of the south-west quarter, &c., made by *Milton Jennings*, then acting school commissioner, &c., is hereby declared legal." So far the enactment is sufficiently explicit; but it proceeds—"and that *Abner Evans*, purchaser of said lands, shall be entitled to all the benefits of said purchase, as if the said *Jennings*

May Term,
1857.

had, at that time, been school commissioner of *Benton* county." The last clause, it is insisted, shows its intent to provide nothing more than that the sale should be as valid as though *Jennings* had been the undoubted school commissioner.

We are not inclined to adopt that construction. The legislature evidently intended to give full relief to *Abner Evans;* because they expressly declare the sale legal, and that declaration, which is consistent with the title of the act, plainly relates to the proceedings of the commissioner. But in addition to the invalidity of the acts of *Jennings,* it seems that the sale was objectionable on another ground— his want of proper qualification; and, hence, the propriety of the latter branch of the enactment, which was alone intended to recognize him as the legal school commissioner.

In view of the whole act, we are of opinion that its evident purpose was to make the sale of the land to *Evans* valid by covering all defects, whether found in the acts of the commissioner, or in his official tenure; and the result is, the judgment must be affirmed.

*Per Curiam.*—The judgment is affirmed with costs.

*J. R. M. Bryant,* for the state.

*H. W. Chase* and *J. A. Wilstach,* for the appellee.