LANNING v. OSBORNE et al.

RIPPEY v. SAN DIEGO LAND & TOWN CO. et al.

(Circuit Court, S. D. California. March 22, 1897.)

Nos. 671 and 716.

1. FEDERAL COURTS—JURISDICTIONAL AMOUNT.

In a suit brought by the receiver of a water company to establish his alleged right to fix the rates at which he should furnish to consumers water for irrigation, it is the value of that right which constitutes the amount in controversy, and not the mere difference between the annual rate contended for by the defendants and that to which the complainant asserts a right.

2. SAME—SUITS BY RECEIVERS.

A suit by or against a receiver of a federal court in the course of the winding up of a corporation is ancillary to the main suit, and is cognizable in the same court, regardless of the amount in controversy.

3. SAME—STAY OF PROCEEDINGS IN STATE COURT.

The provision of Rev. St. § 720, that no writ of injunction shall be granted by any court of the United States to stay proceedings in any state court, with a certain exception, relates only to the stay of proceedings begun in a state court before any resort to the federal court, and does not apply to proceedings begun in the state court after the jurisdiction of the federal court has attached.

4. SAME.

Where a federal court has taken possession of the property of an insolvent water company by the appointment of a receiver, and the receiver has brought suit in that court to test the alleged right of the company to fix water rates, the jurisdiction thus acquired cannot be taken away by a subsequent suit brought by a consumer of water in a state court to test the same question; and such a suit, having been removed to the federal court, will not be remanded.

Works & Works, for complainant Lanning.

Withington & Carter and C. H. Rippey, for complainant Rippey.

C. H. Rippey, Haines & Ward, and J. S. Chapman, for defendants Osborne and others.

Works & Works and Works & Lee, for defendant San Diego Land & Town Co.

ROSS, Circuit Judge. The bill in this case, to which there are a large number of defendants, was filed January 6, 1896. It alleges, among other things: That on the 4th day of September, 1895, the complainant was, by an order and decree of the circuit court of the United States for the district of Massachusetts, duly made and entered, appointed receiver of all of the property of the San Diego Land & Town Company, with full power to take possession of and manage, operate, and control the same, including the plant and water system in the bill mentioned; and that by an order of this court, duly made and entered September 30, 1895, the said first-mentioned order was duly confirmed as to all property of the said company situated within the jurisdiction of this court, including the said water plant and system, and that the complainant was by the said last-mentioned order duly appointed receiver of the said mentioned property, with full power and authority to manage and control the same,—by virtue

of which orders and decrees the complainant took possession of
and entered upon and continued the management thereof as such re-
ceiver. That the San Diego Land & Town Company, of which the
complainant is thus the duly appointed and qualified receiver, is a
corporation duly organized and existing under and by virtue of the
laws of the state of Kansas, and at the times mentioned in the bill
was doing business in the state of California. That during all
the times mentioned the company was, and still is, the owner of
valuable water, water rights, reservoirs, and of a pipe system for fur-
nishing water to consumers for domestic, irrigation, and other pur-
poses, and of a franchise for the impounding, sale, distribution, and
disposition of such waters to the defendants and other consumers,
and to the city of National City, in this state, and its inhabitants.
That its main reservoir and supply of water is, and was at the times
mentioned, situated in a small stream called the "Sweetwater River,"
in San Diego county, distant about five miles from National City;
and that its system of reservoirs, mains, flumes, aqueducts, and pipes
covers and can supply a limited amount of territory, consisting of cer-
tain farming lands within and outside of National City, and in part
of the residence portion of that city. That the company, in pro-
curing the water and water rights, reservoirs, and distributing
system owned by it, and in preparing itself to supply consumers
with water, expended, up to January 1, 1896, $1,022,473.54, which
was reasonably necessary for those purposes. That by the expendi-
ture of that sum of money the company procured and owns, subject
to public use, and the regulation thereof by law, the property men-
tioned. That the capacity of its reservoir is 6,000,000,000 gallons
of water. That the defendants are the owners, respectively, of
tracts of land under the company's water system, most of the defend-
ants owning and holding small tracts of only a few acres each. That
each of the defendants has, by purchase or otherwise, become the
owner of a right to a part of the water appropriated and stored by
the company necessary to irrigate his tract of land, and is liable to
pay for the use thereof such rental as the company is entitled to
charge and collect. That the annual expense of operating and keep-
ing in repair the reservoir and water system of the company, and of
furnishing the consumers with water, is, including interest on its
bonds, and excluding the natural and necessary depreciation of its
system, $33,034.99. That in order to pay the company the amount
of its annual expenses and an income of 6 per cent. on the amount
actually invested in its water, water rights, and water system up to
the 1st day of January, 1896, it is necessary that rates for the water
sold and consumed be so fixed as to realize to the company the sum of
$119,791.66. That the total amount that was realized by the com-
pany from sales of water and water rights and from all other sources
on account of its business of supplying water to consumers outside
of the city of National City for the year ending January 1, 1896, was
about $13,000, and that no more than that sum can probably be real-
ized for the year ending January 1, 1897, at the rates now prevailing,
That all of the mains and pipes of the company and other parts of its
property used in furnishing water to consumers are perishable prop-

erty, and require to be replaced at least once in 16 years, and require frequent repairs. That in order to acquire the water and water rights and to construct its system of waterworks, the company was compelled to and did borrow $300,000, and that it is compelled to pay, as interest thereon, $21,000 annually, which sum must be realized from the sale of its water, and is a part of its operating expenses. That the proportionate share of the revenues of the company that should be raised by water rates within the limits of National City, as compared with the revenues that should be raised and paid as rates by consumers outside of that city, is about one-third. That the amount that can be realized from that city and its inhabitants per annum from the rates now prevailing under the ordinance established by that municipality is about $10,715, and no more. That the value of the water, water rights, reservoirs, franchises, and property necessary for the proper operation of the business of the company and now held by it is $1,100,000, and that the same is necessary for the use of the company in furnishing water to the defendants and other consumers. That the city of National City is a municipal corporation of the sixth class, organized under the general laws of the state of California; and that the rates to be charged for water within the city are fixed by its board of trustees, as provided by law. That the company commenced to furnish water to consumers in the year 1887. That it was then informed by its engineer that its system and the supply of water that could be stored thereby would furnish water to consumers sufficient to irrigate 20,000 acres of land, and would supply such water, in addition thereto, as would be necessary for domestic use inside and outside of the city of National City. That the company was then unfamiliar with the operation of a plant and system of the kind constructed by it, and did not know what the cost of operating and maintaining the same would be. That, relying upon the report and estimate of its engineer, and believing that by fixing and charging an annual rate of $3.50 per acre for irrigation it could meet its operating expenses, and pay it some interest on its investment, it fixed and established, and has since charged, the rate of $3.50 per annum, and no more, until January 1, 1896. That, instead of being able to supply from its system water sufficient to irrigate 20,000 acres, it has been demonstrated by actual experience that the system will not supply water sufficient to irrigate to exceed 7,000 acres, together with the water demanded for domestic use, and probably not to exceed 6,000 acres, although there are about 10,000 acres under the system susceptible of irrigation. That at the rate of $3.50 per acre, if water should be demanded and used upon the whole of the lands which the system is able to supply with water, and rates are allowed in National City equally high for domestic use and irrigation, the company would not be able to pay its operating expenses and maintain its plant and system; and that the company has been, and still is, under the rates mentioned, losing money every year, and its plant and system has been and is gradually going to decay from natural depreciation consequent upon its use in supplying consumers with water, without any revenue or means being provided for replacing the same, whereby the system and the money invested by

the company therein will be wholly lost to it, and it will, if the rate of $3.50 per acre be maintained, be compelled to furnish water to consumers at an actual and continual loss. That, in order to pay the costs of operating the plant and maintaining the same, and pay the company a reasonable interest on its investment, or a reasonable sum for its services in supplying water to the defendants and other consumers, it will be necessary for it to charge a rate per acre per annum of not less than $7 for irrigation purposes, which sum is a reasonable rate for consumers to pay, and the smallest amount for which the company can furnish the water without loss to it. That by the laws of the state of California the board of supervisors may, upon the petition of 25 inhabitants who are taxpayers of the county, fix the rate of yearly rental to be collected by the company, but no such petition has ever been presented, or rates fixed, in the case of the company. That, for the reasons stated, the company gave notice to the defendants that on January 1, 1896, it would establish a rental of $7 per acre per annum for water supplied to their, and each of their, lands for irrigation, and that from and after that date they, and each of them, would be required to pay that sum for the irrigation of their, and each of their, lands, and that the receiver, after his appointment, and before the date mentioned, gave a similar notice. That the defendants, and each of them, refused to pay the rate of $7 per acre, and maintained that neither the company nor the receiver has any legal right to increase the amount of rental to be paid by them, or any of them, and that the rate of $3.50, established and collected by the company, must be and remain the established rate of rental until a rate is established by the board of supervisors of the county in which the plant is situated. That an increase of the rate is absolutely necessary to enable the receiver to maintain and operate the plant and pay the expenses of its maintenance and operation, as he is required by law to do. That, in order to enforce the payment of the rate so fixed, the receiver caused the water to be shut off from the premises of the defendants, and each of them, until such rates are paid, and that the defendants threatened to, and will, unless restrained from so doing by this court, commence suits in the superior court of the county of San Diego, state of California, to compel the receiver to turn on and furnish water to their lands without the payment of $7 per acre rental, on the ground that they are entitled to the use of the water for $3.50 per acre, and for damages for cutting off the said supply of water. That the rights of the defendants are the same, and the determination of the question of the right of the company and of the receiver to increase the rate of rental to be charged and collected affects all of the defendants in the same way and to the same extent, except that the quantity of land owned by the several defendants is different. That the bringing of such suits by the defendants separately will involve the company, the receiver, and the defendants in a multiplicity of suits, and put them, and each of them, to great and unnecessary cost and expense, and seriously hinder the receiver in the proper operation and management of the property of the company and the settlement of its outstanding debts, liabilities, and obligations, while all of the questions

involved in such litigation, and the rights of all of the parties in interest, can be better settled and determined in one suit, and vexatious litigation and unnecessary expense and consequent unnecessary interference with the receiver's management and control of the property and business of the company be thereby avoided. That the proposed increase in rates will add to the revenue and earnings of the company from the sale and distribution of the water from its system, with the amount of land now under irrigation, not less than $14,000 per annum, and upon the whole of the lands that can be irrigated under the system of the company not less than $21,000 per annum.

The prayer of the bill is that the defendants, and each of them, be enjoined from prosecuting, in the state courts or elsewhere, separate actions against the receiver or the company growing out of the matters alleged; that the defendants, and each of them, be required to appear in this suit, and set up any claims they may have against the right of the receiver or the company to increase the rate for water so furnished; and that it be finally decreed by the court that the receiver and the company have the right to increase the rate to any reasonable sum, and that the sum of $7 per acre per annum is a reasonable rental to be charged for irrigation; and that the defendants, and each of them, be required to pay that rate as a condition upon which water shall be furnished them; and for such other and further relief as the nature of the case may demand.

In due time the defendants filed an answer to the bill, in which they set up various grounds upon which they claimed that the San Diego Land & Town Company and its receiver became legally and equitably bound to supply them, respectively, for all time, with water for irrigation at the rate of $3.50 per acre per annum, exceptions to which answer, filed by the complainant, were sustained by the court for reasons given in an opinion filed at the time, and reported in Lanning v. Osborne, 76 Fed. 319. Subsequently the defendants filed an amended answer, to which exceptions for insufficiency and impertinence were also filed by the complainant. Upon the hearing of these exceptions the counsel for the defendants strenuously objected to the jurisdiction of the court; but, after careful consideration, I am unable to see the least ground for their contention. But for the high character of the counsel, and for the earnestness with which they press the point, I should be disposed to think it little less than absurd to say that the subject-matter of the controversy between the complainant and the respective defendants is the sum of $3.50,—the mere difference between the annual rate contended for by the defendants and that to which the complainant asserts a right. The real subject of the controversy is the asserted right on the part of the land and town company to establish the rates at which it will furnish water to the defendants for the purpose of irrigation, in the absence of any action on the part of the board of supervisors of the county. The establishment of that right, denied by the defendants, is the principal object of the bill, and it is the value of that right which constitutes the amount in controversy. Railway Co. v. Kuteman, 4 C. C. A. 503, 54 Fed. 547; Fost. Fed. Prac. § 16; Stinson v. Dousman, 20 How. 461; Railroad

Co. v. Ward, 2 Black, 485. The bill shows the value of that right to be more than $2,000. But, independently of this consideration, when a court of equity appoints a receiver to take possession of and hold the property of a corporation, that court "assumes the administration of the estate; the possession of the receiver is the possession of the court; and the court itself holds and administers the estate, through the receiver as its officer, for the benefit of those whom the court shall ultimately adjudge to be entitled to it." Porter v. Sabin, 149 U. S. 473, 479, 13 Sup. Ct. 1008. In such a case, said the supreme court in White v. Ewing, 159 U. S. 36, 39, 15 Sup. Ct. 1018, 1019, "any suit by or against such receiver, in the course of the winding up of such corporation, whether for the collection of its assets or for the defense of its property rights, must be regarded as ancillary to the main suit, and as cognizable in the circuit court, regardless either of the citizenship of the parties or of the amount in controversy." See, also, Price v. Abbott, 17 Fed. 506; Armstrong v. Trautman, 36 Fed. 275. Moreover, it would not be difficult, I think, to maintain the jurisdiction of this court upon the ground that one of the objects of the bill is to prevent a multiplicity of suits alleged to be threatened by the defendants against the receiver in respect to the property in his hands as the officer of this court. The provisions of section 720 of the Revised Statutes, which are the same as section 5 of the act of congress of March 2, 1793, to the effect that no writ of injunction shall be granted by any court of the United States to stay proceedings in any court of a state, with a certain exception, not necessary to be mentioned, relate only to the stay of proceedings begun in the courts of a state before any resort to the United States court. In Fisk v. Railway Co., 10 Blatchf. 520, Fed. Cas. No. 4,830, Judge Blatchford said:

"The provision of section 5 of the act of March 2, 1793, that a writ of injunction shall not be granted to stay proceedings in any court of a state, has never been held to have, and cannot properly be construed to have, any application except to proceedings commenced in a state court before the proceedings are commenced in the federal court; otherwise, after suit brought in a federal court, a party defendant could, by resorting to a suit in a state court, defeat, in many ways, the effective jurisdiction and action of the federal court after it had obtained full jurisdiction of person and subject-matter. Moreover, the provision of the act of 1793 (now section 720, Rev. St.) must be construed in connection with the provision of section 14 of the act of September 24, 1789, that the federal courts shall have power to issue all writs which may be necessary for the exercise of their respective jurisdictions. 1 Stat. 81, 82." Rev. St. U. S. § 716.

See, also, Dietzsch v. Huidekoper, 103 U. S. 494; French v. Hay, 22 Wall. 250; Sharon v. Terry, 36 Fed. 365.

As said by the circuit court of appeals in Railway Co. v. Kuteman, supra:

"When the United States courts acquire jurisdiction of the parties and of the subject-matter, so far as acquired, the jurisdiction is complete. There is not, in our system, anything so unseemly as rivalry and contention between the courts of the state and the courts of the United States' (Sharon v. Terry, supra); and in a case where the circuit court would have jurisdiction to enjoin a party from bringing a multiplicity of suits which he was threatening to bring in the United States courts, and should exercise that jurisdiction, it is manifest how inadequate the relief would be if the party

enjoined was left free to institute proceedings on the same cause of action in a state court having concurrent jurisdiction. It seems clear to us that no such element of weakness affects the jurisdiction of the United States courts; that in a proper case for injunction, of which, by reason of the sub-ject-matter or of the citizenship of the parties, the United States courts have jurisdiction, the injunction may issue, and will be effectual to prevent the institution of a multiplicity of suits, or of any suit, in any other court: and that there is drawn to the court, otherwise properly issuing the injunc-tion, the consideration of and jurisdiction over the whole subject-matter on account of which or out of which said suits are apprehended."

Upon the merits, it is sufficient to say that the views expressed by this court when considering the exceptions to the original an-swer (of the correctness of which I have no doubt), applied to the amended answer, show its insufficiency also as a defense to the bill, unless it be that an act passed at the present session of the leg-islature of California, and which has been called to the attention of this court in another case pending herein, works a change in the law as already declared. That statute is said to have been signed by the governor on the 3d day of March, 1897, and to be in these words:

"An act to amend an act entitled 'An act to regulate and control the sale, rental, and distribution of appropriated water in this state, other than in any city, city and county, or town therein, and to secure the rights of way for the conveyance of such water to the place of use,' approved March 12, 1885, by inserting a new section therein, relating to contracts for the sale, rental, and distribution of water, and the sale or rental of easements and servitudes of the right to the flow and use of water.

"The people of the state of California, represented in the senate and as-sembly, do enact as follows:

"Section 1. The act entitled 'An act to regulate and control the sale, rental, and distribution of appropriated water in this state, other than in any city, city and county, or town therein, and to secure the rights of way for the conveyance of such water to the place of use,' approved March twelfth, eighteen hundred and eighty-five, is hereby amended by inserting therein a new section, to be numbered section eleven and one half thereof, as follows:

"Section 11½. Nothing in this act contained shall be construed to prohibit or invalidate any contract already made, or which shall hereafter be made, by or with any of the persons, companies, associations, or corporations described in section two of this act, relating to the sale, rental, or distribu-tion of water, or to the sale or rental of easements and servitudes of the right to the flow and use of water; nor to prohibit or interfere with the vest-ing of rights under any such contract.

"Sec. 2. This act shall take effect immediately, and be in force from and after its passage."

Upon the question as to what extent, if at all, this late statute affects the rights of the parties to this suit, they should be heard, and upon that question the respective parties will be further heard on the merits of the case.

In the amended answer, all of the defendants, except C. H. Rip-pey and M. L. Ward, having made admissions similar to those con-tained in the original answer in regard to their respective owner-ship of the lands for which the land and town company and its re-ceiver had furnished them with water, as alleged in the bill, and the defendants Rippey and Ward having in the original answer ad-mitted their respective ownership of the tracts of land now claimed to belong to their respective wives, the counsel for the complainant,

upon notice given, at the time the exceptions to the amended answer came on for hearing, asked leave to make Mrs. Rippey and Mrs. Ward parties defendant, which leave I am of opinion should be granted.

In White v. Ewing, supra, the court said:

"Indeed, it was conceded that where an insolvent corporation is placed in the hands of a receiver of the circuit court, such appointment draws to the jurisdiction of that court the control of its assets so far as persons having claims to participate in the distribution of such assets are concerned, and that parties must go into that court in order to assert their rights, prove their demands, and receive whatever may be due them, or their share or interest in the estate. But it is insisted that there is a distinction between cases where parties are brought before the court for the purpose of the payment to them of claims they may hold against the estate and cases where it is sought to recover of them claims which the receiver insists they owe the estate; that the receiver stands in the shoes of the company, and has no higher rights than the corporation, and, having sued for less than the jurisdictional amounts, that as to them the cases must be dismissed. This position is entirely correct, so far as the right of the receiver to recover upon the merits is concerned; but it has no bearing whatever upon the question of the jurisdiction of the court to pass upon such merits. * * * The court proceeds upon its own authority to collect the assets of an estate with the administration of which it is charged; and, if the receiver in such cases appears as a party to the suit, it is only because he represents the court in its inherent power to wind up the estate of an insolvent corporation over which it has by an original bill obtained jurisdiction. In this particular the jurisdiction of the circuit court does not materially differ from that of the district court in bankruptcy, the right of which to collect the assets of a bankrupt estate we do not understand ever to have been doubted. There is just as much reason for questioning the jurisdiction of the court in this case upon the ground of the want of diverse citizenship as upon the ground that the requisite amount is not involved."

What has been said above, applied to the motion made at the time of the hearings above considered to remand the suit brought in the superior court of San Diego county by Mrs. Rippey against the receiver and others, after the commencement of the present suit, to test the same questions, and by that court transferred to this court, makes it proper to deny the motion. The taking possession by this court of the property of the insolvent corporation, and the subsequent suit by its officer to enforce the alleged rights of that corporation, draws to the jurisdiction of this court the entire subject-matter, which cannot be taken away or interfered with by any subsequent suit in any other court.

Orders will be entered: (1) Granting the complainant's motion for leave to make Virginia Rippey and Ella B. Ward parties defendant; (2) denying the motion to remand to the state court the suit entitled "Virginia Rippey vs. San Diego Land and Town Company et al."; and (3) restoring the case to the calendar for further hearing in respect to the effect upon the merits of the case of the act above referred to, passed at the present session of the legislature of California.