LANNING v. OSBORNE et al.

(Circuit Court, S. D. California. July 22, 1897.)

No. 671.

WATER SUPPLY IN CALIFORNIA—CONTRACTS RELATING TO FURNISHING WATER —AMENDMENT OF ACT.

The amendment of March 2, 1897, of Acts Cal. March 12, 1885, prescribing the manner of fixing water rates, by inserting therein a new section, which provides that nothing contained in the act shall be construed to prohibit or invalidate any contract relating to the sale, rental, or distribution of water, or to the sale or rental of easements or servitudes of the right to the flow and use of water, nor to prohibit or interfere with the vesting of rights under such contracts, does not give validity to any such contracts which in the absence of such amendment would be void.

Works & Works, for complainant.
Haines & Ward, C. H. Rippey, and J. S. Chapman, for defendants.

ROSS, Circuit Judge. This cause has been under consideration on two previous occasions. 76 Fed. 319; 79 Fed. 657. In considering the exceptions to the original answer the court held, among other things, that "as the water in question, from the moment the appropriation became effective, became charged with a public use, it was not in the power of either the corporation making the appropriation, or of the consumers, to make any contract or representation that would at all take away or abridge the power of the state to fix and regulate the rates" at which it should be furnished; that the constitution of California conferred upon the legislature of the state the power, and made it its duty, to prescribe the manner in which such rates should be established; and that the legislature did that by an act approved March 12, 1885 (St. 1885, p. 95), entitled "An act to regulate and control the sale, rental, and distribution of appropriated water in the state other than in any city, city and county, or town therein and to secure the rights of way for the conveyance of such water to the places of use." Construing that act, this court said in Lanning v. Osborne, 76 Fed. 335:

"By the terms of this act of the legislature, the boards of supervisors of the several counties are given power, and it is made their duty, in the manner prescribed in the act, to fix the maximum rates at which any person, company, or corporation may sell, rent, or distribute water appropriated for the purpose. The circumstances and conditions under which such board is authorized and required to do that thing are prescribed by sections 3, 4, 5, and 6 of the act. The action of the board can only be invoked in the first instance by a petition

in writing of not less than 25 of the inhabitants who are taxpayers of the county. It may be that the number thus fixed by the statute is too large: that in some cases it may be difficult, in others impossible, to obtain 25 inhabitants, who are taxpayers of the county, to join in the petition asking the board to establish maximum rates. If so, it is a matter for the consideration of the legislature, with which the constitution has left it. By the statute, as enacted, when such a petition, so signed, has been presented, the board, upon giving the notice required, is empowered to examine witnesses; to send for persons, books, and accounts; to ascertain the value of the water system, and the reasonable expenses of its management and operation, including the cost of repairs, together with all other facts, circumstances, and conditions pertinent to the question; and, after such investigation and consideration, to fix and establish the maximum rates at which the water shall be sold, rented, or distributed to the inhabitants of the county outside of any city, town, or other municipality; the board being empowered to establish different rates for water furnished for the different uses, such as mining, irrigation, mechanical, manufacturing, and domestic, but being required to make them equal and uniform as to each class, and being further required to 'so adjust them that the net annual receipts and profits thereof to said persons, associations, and corporations so furnishing such water 'to such inhabitants shall be not less than six nor more than eighteen per cent. upon the said value of the canals, ditches, flumes, chutes, and all other property actually used, and useful to the appropriation and furnishing of such water, of each of such persons, companies, associations, and corporations; but in estimating such net receipts and profits, the costs of any extensions, enlargement, or other permanent improvements of such water rights or waterworks shall not be included as part of the said expenses of management, repair, and operating of such works, but when accomplished may and shall be included in the present cost and cash value of such work.' By section 6 of the act it is provided that at any time after the rates have been once established by the board of supervisors the same may be established anew, or abrogated in whole or in part, by such board, to take effect one year next after such first establishment, upon either the written petition of 25 inhabitants who are taxpayers of the county, or 'upon the written petition of any persons, companies, associations, or corporations the rates and compensations of whose appropriated waters have already been fixed and regulated and are still subject to such regulation by any of the boards of supervisors of this state, as in this act provided.' Not until after the rates have been once established upon the petition of 25 of the inhabitants who are taxpayers of the county is the person, company, or corporation furnishing the water authorized to make any application to the board. Then, and then only, such person, company, or corporation may apply to have the rates established anew, or abrogated in whole or in part. Since, to make good the appropriation, it is essential that the water be applied to some beneficial use, these provisions of the statute of themselves necessarily presuppose that, until the action of the board of supervisors is called into play, the parties furnishing the water must designate the rates. It cannot be furnished for nothing. The law does not exact that, nor has any consumer the right to expect it. The statute evidently proceeds upon the theory that the rates charged by the person, company, or corporation may be satisfactory to the consumers, in which event there would be no occasion for the intervention of the board of supervisors. But, to protect the consumers in the event such charges should be unsatisfactory, they, and they only, are given the right to first invoke the intervention and action of the board. Until that time the rates established and collected by the person, company, or corporation furnishing the water prevail. This, it seems to me, would be the true and obvious construction of the statute if it had not so declared in terms. But the statute itself does so declare in terms, and in these words: 'Until such rates shall be so established [namely, those first established by the board], or after they shall have been abrogated by such board of supervisors as in this act provided, the actual rates established and collected by each of the persons, companies, associations, and corporations now furnishing or that shall hereafter furnish appropriated waters for such rental or distribution to the inhabitants of any of the counties of this state shall be deemed and accepted as the legal rates thereof.' Act Cal. March 12, 1885, § 5."

These views were adhered to by the court on consideration of the exceptions to the amended answer. 79 Fed. 663. After the decision of the court sustaining the exceptions to the original answer, and pending the submission of the exceptions to the amended answer, to wit, March 2, 1897, the legislature of the state of California amended the act of March 12, 1885, by inserting a new section therein, numbered 11½, and which is in these words:

"Nothing in this act contained shall be construed to prohibit or invalidate any contract already made, or which shall hereafter be made, by or with any of the persons, companies, associations, or corporations described in section two of this act, relating to the sale, rental, or distribution of water, or to the sale or rental of easements and servitudes of the right to the flow and use of water; nor to prohibit or interfere with the vesting of rights under any such contract."

To enable the respective parties to be heard upon the question as to what extent, if at all, this amendment affects the rights of the parties to the suit, the cause was restored to the calendar, and upon that question they have been fully heard. The amendment of March 2, 1897, has not been construed by the supreme court of the state, so far as I am advised. Whatever the reason for its enactment, or its real design, it is very certain that this court has not the power to add to its language, nor the right, by construction, to import into its provisions a meaning not in consonance with the provisions of the constitution of the state. The amendment does not purport to provide any manner of fixing water rates, nor does it purport to make valid any contracts otherwise invalid. In People v. Stephens, 62 Cal. 209, the supreme court of California, in speaking of sections 1 and 2 of article 14 of the state constitution, said:

"By section 1 of article 14 the use of all water heretofore or hereafter appropriated for sale, rental, or distribution is expressly declared to be a public use. It is not left to the legislature, as formerly, to say whether it shall be a public use or, not, but the constitution itself declares it to be such, and then makes the use subject to the regulation and control of the state (that is to say, of the legislature), in the manner to be prescribed by law, to wit, by statute law, subject, however, to certain enumerated provisions contained in the constitution itself: among them, to provisions in respect to the rates or compensation to be collected by any person, company, or corporation, for the use of water supplied to any city and county, or city, or town, or the inhabitants thereof. Such rates or compensation the constitution expressly declares shall be fixed in a certain specified manner, at a certain time, and by a certain body; and the body failing to do so is expressly made 'subject to peremptory process to compel action, at the suit of any party interested, and liable to such further processes and penalties as the legislature may prescribe.' But by the next section of the same article of the constitution the right to collect the rates or compensation so established is declared to be a franchise, 'and can not be exercised except by authority and in the manner prescribed by law,'—that is, by statute law. But, of course, the constitution contemplated the enacting by the legislature, where they did not exist, of all laws necessary to give effect to its commands, and that none should be passed in contravention of its provisions. When, therefore, the constitution fixed the manner of establishing the rates or compensation to be charged for water furnished to any city and county, or city, or town, or the inhabitants thereof, and further declared that the right to collect the rates or compensation so established is a franchise, and cannot be exercised except by authority of, and in the manner prescribed by, law, it was the duty of the legislature, if they did not exist, to provide the needful laws. But the failure of the legislature to do so, if failure there was, could not prevent the establishment of the rates or compensation specifically required to be established by the constitution."

82 F.—37

If the contracts set up in the amended answer of the defendants were void in the absence of the statutory amendment of March 2, 1897, it is manifest that that amendment did not give validity to them. As already said, the amendment does not even purport to make valid any contract otherwise invalid, nor does it purport to provide any manner of fixing water rates. The invalidity of any and all contracts for the furnishing of water appropriated for sale, rental, or distribution under and by virtue of the constitution and laws of California, other than as prescribed by that constitution and those laws, is, in my opinion, clearly and sufficiently demonstrated in the opinions heretofore rendered in this cause. to which reference has been made. Exceptions to the amended answer sustained.