[No. 8957.]

## WALPOLE v. STATE BOARD OF LAND COMMISSIONERS.

1. WORDS AND PHRASES—*Land*—*Real Estate*, include the surface and whatever lies in a direct line between the surface and the center of the earth.

——*Fee-simple*, imports an estate free and clear of all liens or incumbrances whatsoever; without the rightful participation by any other person in any part of the land.

2. STATE BOARD OF LAND COMMISSIONERS—*Powers*. The State Board of Land Commissioners is a mere agency, with the duty to do no less, and power to do no more, in the disposition of the state lands, than to comply with the directions of the statute.

3. STATE LANDS—*Reservation of Mineral Rights in Sale*. An attempted exception or reservation of the mineral right in a conveyance of the state land is a nullity.

4. ESTOPPEL—*A Void Limitation in a Public Conveyance*, cannot form the basis of an estoppel.

A purchaser of state lands had accepted a certificate of purchase which excepted and reserved the minerals contained therein. At the time of his purchase, he was aware that the certificate would contain this reservation. He paid several installments of the purchase money, and at one time applied to the State Board for a lease authorizing the extraction of coal from the section of which his purchase was a part. *Held*, he was not estopped to question the validity of the reservation.

*Error to Denver District Court.* Hon. JOHN H. DENISON, Judge.

Mr. N. WALTER DIXON, Mr. FLOYD F. WALPOLE, Mr. THOMAS J. DIXON, for plaintiff in error.

Hon. FRED FARRAR, Attorney General, Mr. WENDELL STEPHENS, Assistant Attorney General, for defendant in error.

Mr. JUSTICE BAILEY delivered the opinion of the court.

On November 3rd, 1909, plaintiff in error, plaintiff below, purchased from the State Board of Land Commissioners of the State of Colorado, defendant in error,

defendant below, a certain tract of school land, described as the Northwest Quarter of Section 16, Township 1, North, Range 68 West, for the sum of $3,600. In March, 1909, application to purchase the entire section was made and the Board advertised it for sale, under the statute. The notice of sale contained the following mineral reservation:

"Reserving, however, to the State of Colorado, all rights to any and all minerals, ores and metals of every kind and character, and all coal, asphaltum, oil, and other like substance, in and under said land, and the rights of ingress and egress for the purpose of mining, together with as much of the surface of the same as may be necessary for the proper and convenient working of such minerals and substances."

Plaintiff was present at the sale and purchased the quarter section above described, made the first payment, and arranged for payment of the balance of the purchase price in eighteen annual installments, receiving a certificate of purchase upon which was printed the above mineral reservation. In December, 1910, defendant issued to one Kirchhoff a mining lease of the entire section 16, permitting him to extract coal therefrom for a period of five years. No coal was mined under this lease, which was cancelled by the board in 1915. Plaintiff thereupon filed application for a similar lease for a period of eight years. The testimony is conflicting as to whether plaintiff withdrew this application, or whether it was rejected by the defendant board. In any event, plaintiff did not obtain the lease, but one was granted to George Morrison.

In August, 1915, plaintiff began suit in the District Court of the City and County of Denver, asking injunctive relief to restrain the board from issuing such lease to Morrison, so far as it affected the quarter section here involved. On trial the bill was dismissed, judgment en-

tered for defendant, and plaintiff brings the cause here for review on error.

In disposing of the issues involved, it is necessary to first decide whether the State Board of Land Commissioners has any inherent power or authority to reserve mineral rights, when disposing of State land. The Board is created by section 10 of article IX of the State Constitution:

"It shall be the duty of the State Board of Land Commissioners to provide for the location, protection, sale or other disposition of all lands heretofore, or which may hereafter be granted to the State by the general government, under such regulations as may be prescribed by law; and in such manner as will secure the maximum possible amount therefor  *  *  *.  The general assembly shall provide for the sale of said land, from time to time, and for the faithful application of the proceeds thereof in accordance with the terms of said grants."

Under this section of the Constitution the board does not in any sense stand in the position of an owner. It is a mere agent, with a duty to do no less, and power to do no more, respecting the disposition of State lands under its control, than is provided in sections 5167, 5175, and 5184 and 5185, of the Revised Statutes. See *In re Leasing of State Lands,* 18 Colo. 359, 32 Pac. 986.

Section 5167 provides that:

"The governor of the State shall be, and is hereby authorized, and in case of his absence or inability, the lieutenant governor shall be, and is hereby authorized to execute a good and sufficient deed or patent of conveyance, transferring in fee, without covenants, any and all lands which shall, or may be ordered sold, or which shall be sold and disposed of by the State Land Board under the statutes of this State. Such deed or patent shall be attested by the secretary of the state, countersigned by the register, and have the great seal of the

state and the seal of the State Board of Land Commissioners thereto attached, but need not be acknowledged. The certified copy of the record of any such deed or patent shall be receivable in evidence in all courts of record in this state, the same as the original.''

It is provided by section 6296, Rev. Stat. 1908, that the terms ''land,'' ''lands,'' and ''real estate'' shall be construed to include lands, tenements and hereditaments. Land has an indefinite extent upward and downward from the surface of earth, and therefore includes whatever may be erected upon it, and whatever may lie in a direct line between the surface and the center of the earth. 3 Kent 378. Tiedeman, at sec. 2, (3rd Ed.) defines land thus:

''Land is the soil of the earth, and includes everything erected upon its surface, or which is buried beneath it. * * * A grant of lands therefore, without any qualification, conveys not only the soil, but everything which is attached to it, or which constitutes a part of it, the buildings, mines, trees, growing crops, etc.''

Section 5185 authorizes the sale of lands upon deferred payments, with the privilege of anticipating installments, and provides that:

''* * * Whenever a purchaser of any state land has complied with all the conditions of the sale, and paid all purchase money with the lawful interest thereon, he shall receive a patent for the land purchased; such patent shall be signed by the Governor, attested by the Secretary of State, and countersigned by the Register, and have the great seal of the state and the seal of the State Board of Land Commissioners thereto attached; and when so signed such patent shall convey a good and sufficient title in fee simple.''

The board, therefore, must convey the land in fee. The terms ''fee,'' ''fee simple,'' and ''fee simple absolute,'' are interchangeable, and convey an estate the

owner of which may exercise an exclusive control of against all others:

"A good and sufficient title in fee simple means the legal estate in fee, free and clear of all valid claims, liens and encumbrances whatsoever. It is the ownership of land, the *dominium directum et absolutum,* without any rightful participation by any other person in any part of it." *Jones v. Gardner,* 10 Johns, (N. Y.) 266.

In *Adams v. Henderson,* 168 U. S. 573, 42 L. Ed. 584, 18 Sup. Ct. 179, in the course of the opinion the court said:

"A good and indefeasible title in fee imports such ownership of the land as enables the owner to exercise absolute and exclusive control of it against all others."

In *City of Leadville v. St. L. S. & R. Co.,* 29 Colo., the court, in defining the term "fee" at page 50, 67 Pac. 1126, said:

"The definition of the word 'fee' in American law as given by Black's Dictionary, is: 'It is an absolute estate in perpetuity, and the largest possible estate a man can have, being in fact allodial in its nature,' and this appears to be the generally accepted definition."

Such is the title and ownership which the legislature declares a purchaser from the state shall acquire. The requirement of sec. 5185 that every purchaser shall receive a patent for the "land purchased," which shall convey to him "a good and sufficient title in fee simple," necessarily carries with it the mandate that the State Board shall so offer and sell the lands of the State. The court cannot limit the language of the statute to find authority for the board to sell, or require the purchaser to take, a conditional fee in the lands purchased. In construing similar words of a New Jersey statute, the appellate court of that state said:

"* * * They are senseless unless applied to such an estate as, in a legal sense, is comprehended in the

term 'land' whereof the unqualified use and possession
are obtained for the legitimate purpose of the purchas-
er,'' and the court further declared that to make them
mean anything less would be ''legislative and not judi-
cial.'' *U. S. Pipe Line Co. v. Delaware, etc., R. R. Co.*, 62
N. J. L. 254, 41 Atl. 759, 42 L. R. A. 572.

There is nothing in the statute either directly or in-
directly authorizing the board to encumber lands sold
with any easement, exception or reservation. It was
held in *Burke v. So. Pac. R. R. Co.*, 234 U. S. 669, 58 L.
Ed. 1527, 34 Sup. Ct. 907, that when officials authorized
to dispose of lands do so by a patent containing unau-
thorized reservations or exceptions, the land passes un-
affected by such exception or reservation. While the
board is the creature of the Constitution it can dispose
of state lands only under such regulations as may be pre-
scribed by law; and it has and can have no powers or
functions other than those bestowed upon it by legisla-
tive enactment. As was said in *In re Leasing of State
Lands, supra*:

''If  *  *  *  the State Land Board has the power
to lease the State lands in such manner as will, in its
judgment, secure the maximum amount therefor with-
out regard to the statute, then the provisions reserving
the right to the legislature to prescribe regulations is
not effective for any purpose.''

Section 5181, Rev. Stat. 1908, authorizing the sale
of school lands, contains the following proviso, to com-
ply with the enabling act:

''Provided, further, That such lands shall only be
sold at public auction, and at not less than three and one-
half dollars per acre.''

If the term ''land'' in the statute be construed to
mean the soil of the earth, and all that is upon or beneath
it, then that is what the board is required to convey, and
not merely an interest in it.

In Section 5174, Rev. Stat. 1908, it is provided that: "Nothing herein contained shall be construed to interfere with the right of the purchaser of any such lands to the immediate possession thereof, upon the completion of his purchase."

It is inconsistent with this provision that the State Board has authority to make reservations under which the purchaser may later be excluded from the use and enjoyment of the land purchased.

Where the policy of the law and its command is that a purchaser of public lands shall receive a good and sufficient title in fee simple, surely officers charged with the administration of the law cannot lawfully agree to, or convey, any other title, because the express mandate is an implied prohibition against any other manner of disposition. Nor can a purchaser, by agreement or acquiescence, clothe land officers with such authority, because that which is inhibited by law can never be made lawful by consent of the parties affected. When a patent is issued, it must be deemed the grant of a good and sufficient title in fee simple, and if it contains any reservations or exceptions which are inconsistent with or repugnant to the grant of such an estate, they must be held to be invalid under the rule which declares that reservations or exceptions which are repugnant to the grant are void. 15 Cyc. 675.

We conclude, therefore, that where state lands are sold, the board has no authority to sell less than the whole, and until authority is given it to sell less, like surface rights, or other partial interest, it may not do so. The constitutional provision which establishes the land board also places its control and regulation with the legislative department of government, and the board can act only within the limits and in the manner prescribed by that body. As the law does not vest the land board with authority to make any reservation when it sells

State lands, the one attempted in the contract here involved is a nullity, and without effect for any purpose.

The testimony shows that when plaintiff bought the land he was aware that the mineral reservation was to be incorporated in his certificate of purchase, that he continued to pay the annual installments of the purchase price after he knew that the Board had granted a mining lease covering his quarter section, and that he himself at one time applied for a similar lease when the first one was cancelled. Defendant, therefore, invokes the doctrine of estoppel. But as the Board lacked the legal capacity to create the easement, it is void. 9 R. C. L. 747, and being void, cannot form the basis of an estoppel. 16 Cyc. 721. Undoubtedly the plaintiff was mistaken as to his legal rights, but such mistake cannot estop him from asserting them when known. 16 Cyc. 734. An admission as to the legal effect of a contract, or an admission as to the law, does not act as an estoppel. 16 Cyc. 757. This is true also as to an admission of a mixed question of law and fact  *Daub v. No. Pac. Ry.*, (C. C.), 18 Fed. 625.

The controlling case upon this branch of the controversy is *Burke v. So. Pac. Ry. Co., supra*. There, similar mineral reservations in a patent having been declared void, the question of estoppel was raised. In passing upon that contention, the court said:

"Lastly, it is urged that the railroad company accepted the patent with the mineral land exception therein, and also expressly agreed that the latter should be effective as one of the terms of the patent, and so is bound by it, or at least estopped to deny its validity. There are insuperable objections to this contention. The terms of the patent whereby the Government transfers its title to public lands are not open to negotiations or agreement. The patentee has no voice in the matter. It in no wise depends upon his consent or will. We must

abide the action of those whose duty and responsibility are fixed by law. Neither can the land officers enter into any agreement upon the subject. They are not principals but agents of the law, and must heed only its will. (*Deffsback v. Hawke,* 115 U. S. 392, 406, 29 L. Ed. 423, 6 Sup. Ct. 95; *Davis v. Wiebbold,* 139 U. S. 507, 527, 35 L. Ed. 238, 11 S. C. Rep. 628; *Shaw v. Kellog,* 170 U. S. 312, 327, 343, 42 L. Ed. 1050, 18 Sup. Ct. 632.) Of course if they enter into any forbidden agreement whereby public land is transferred to one not entitled to it the patent may be annulled at the suit of the government, but they cannot alter the effect which the law gives a patent while it is outstanding.''

On this proposition the lower court in that case certified the following question to which is appended the answer of the court:

''If the mineral exception clause was inserted in the patent with the consent of the defendant, Southern Pacific Railroad Company, and under an understanding and agreement between it and the officers of the Interior Department that said clause should be effective to keep in the United States title to such of the lands described as were in fact mineral, are the defendants, Southern Pacific Railroad Company and the Kern Trading Company estopped to deny the validity of said clause?''

\* \* \* ''Answer—No; such an agreement is of no greater force than the exception in the patent. The latter being void, the patent passes the title and is not subject to collateral attack, or to attack by strangers whose only claim was initiated after the issue of the patent.''

It seems plain that there can be no estoppel here against plaintiff, as manifestly a party ought not to be estopped to deny the validity of a thing to which it would be unlawful for him to give assent. The reservation itself being void, under the statutes relating to the sale

of State lands, plaintiff is not estopped to set up such invalidity.

Whether any ground exists upon which the State might proceed to rescind the sale and cancel the certificate of purchase is a question not here involved, and therefore not determined. But it is self-evident that as long as the State permits the certificate of purchase to stand, retains the money which plaintiff has already paid it, and continues to accept further payments from him, it must be bound by the legal effect of the transaction.

*Judgment reversed.*

Decision *en banc.*

Mr. Justice Hill and Mr. Justice Scott dissent.

Mr. Justice Allen not participating.