## No. 12,671.

MILLER ET AL. *v.* LIMON NATIONAL BANK.
(296 Pac. 796)

Decided February 24, 1931.

Mr. ROBERT E. WINBOURN, Attorney General, Mr. JOHN S. UNDERWOOD, Attorney General, Mr. E. J. PLUNKETT, Assistant, Mr. SIDNEY P. GODSMAN, Assistant, for plaintiffs in error.

Mr. RALPH W. McCRILLIS, Mr. HORACE N. HAWKINS, for defendant in error.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFFS in error are hereinafter referred to as the board, and defendant in error as the bank. The latter brought this action under our Declaratory Judgments Act seeking a judicial determination of the duty of the board to draw a voucher in favor of the bank for the return of money paid by it "by mistake and error" on an invalid certificate of purchase of state land. The cause was tried to the court on an agreed statement of facts and to review a judgment in favor of the bank the board brings error.

Prior to March 5, 1917, it was the practice of the board, which was vested with authority to sell state school lands, to sell surface rights only, by incorporating in the notice of sale, certificate of purchase, and patent, the following: "Reserving, however, to the State of Colorado all right to any and all minerals, ores and metals of every kind and character and all coal, asphaltum, oil and other like substances in or under said land and the right of ingress and egress for the purpose of mining, together with enough of the surface of same as may be necessary for the proper and convenient working of such minerals and substances."

In 1914 the board published a notice of sale of certain lands. Thereunder two quarter sections were sold May 6 of that year, and certificates of purchase issued. Both notices and certificates contained said reservation. The bank has succeeded to the rights of the purchaser. For convenience we refer to these tracts and their certificates as A and B. Ten per cent of the purchase price was paid in cash and the balance was payable in eighteen equal annual installments at six per cent interest. Payments were made on B to 1917 (a total of $475.80) when it was abandoned. Payments were made on A to 1922 (a total of $1,193.40) when it was abandoned. All this money was paid into the state treasury and passed to the school fund as by law provided. Demand for its return was first made in 1925. The complaint herein was filed July 5, 1927. March 5, 1917, we decided that the board was without authority to sell less than the fee, held that sales with said reservation were void, and that there was no estoppel against a purchaser to allege their invalidity. *Walpole v. State Board,* 62 Colo. 554, 163 Pac. 848.

April 19, 1917, there was duly approved an act of the General Assembly, the pertinent portion of whose title reads: "An Act * * * Validating Sales Heretofore Made * * *." A portion of that Act provided: "All patents and certificates of purchase on state or school

lands heretofore issued and in which a reservation of rights to minerals, ores and metals of any kind or character whatsoever or coal, asphaltum, oil, gas and other like substances has been made, are hereby validated.'' S. L. 1917, p. 496, c. 134, §18. Thereafter follows a so-called ''proviso'' which will be hereafter quoted and considered.

May 6, 1918, we held that one who had purchased under a notice and certificate containing said reservation was not entitled to mandamus against the board to compel the issuance to him of a patent conveying title in fee simple to the lands purchased, and that the certificate being ''void on its face does not require cancellation by a court to render it harmless.'' *Gunter v. Walpole,* 65 Colo. 234, 176 Pac. 290.

March 31, 1919, there was duly approved an act of the General Assembly, the pertinent portion of whose title reads: ''An Act * * * Validating Sales Heretofore Made * * * and Repealing All Acts or Parts of Acts in Conflict Therewith, * * * and Also the Act of The General Assembly * * * Session Laws of 1917, Pages 485 to 504, Inclusive, Same Being Chapter 134.'' This latter act contains the identical validating provision and proviso found in the repealed Act of 1917. S. L. 1919, p. 648, c. 187, §18 (C. L. 1921, p. 477, §1171).

By sections 19 and 20 of the same act it was provided that 30 days default of principal or interest due on certificates of purchase of state land should justify their cancellation, in which case previous payments should be forfeited to the state, title revert to it, and such lands be thereupon subject to resale. C. L. '21, p. 478, §§1172, 1173.

March 7, 1921, we held that a sale of state school land under a certificate of purchase prohibiting an assignment by the purchaser of the right to mine coal on the land ''without the consent and approval of the said board'' was invalid, affirmed a judgment denying mandamus to compel the issuance of a patent to the land pur-

chased, and reviewed and commented upon *Walpole v. State Board* and *Gunter v. Walpole, supra. Cronk v. Shoup,* 70 Colo. 71, 197 Pac. 756.

Acting under said sections 19 and 20 the board, in 1923, cancelled certificate B, and in 1927 cancelled certificate A; in each case after approximately five years default.

Section 11 of the act of 1917 required payment by a lessee of state lands for improvements thereon belonging to another, and proof of such payments before the issuance of a lease, and continued as follows: "Provided, if by any mistake or error, any money has been, or shall hereafter be, paid on account of any sale or lease of state lands, it shall be the duty of the board to draw a voucher in favor of the party paying said money; and on presentation of such voucher the Auditor shall draw his warrant upon the State Treasurer for the amount, and the State Treasurer shall pay the same out of the fund into which such money was deposited or placed." The identical section, under the same number, appears in the act of 1919. C. L. '21, p. 475, §1164. Under that provision the bank demanded of the board a voucher for the payments made on A and B. The board refused, and this suit was instituted.

In classifying contracts as valid, void and voidable, considerable confusion has arisen, particularly with respect to those contracts which are invalid when executed, but capable of being validated. Authorities and text writers, dealing with them prior to validation, frequently refer to them as void; after validation as voidable. To this class belong contracts made by agents beyond their granted and known authority, but within the power of their principals. Such is the act of an agent of the state whose sole authority is statutory, which act the state might authorize by statute, but has not. When performed it is void, and if nothing more be done it forever remains so. But since the state might, by statute, have granted authority to perform the act, so by statute

it may ratify it when performed. Any act "done by one person on behalf of another without prior authority, and which would in law be such other's act if done in pursuance of authority, is as a general rule capable of ratification by him on whose behalf it was done." 2 C. J., p. 469, §82. This rule is applicable to a sale of state property. Where the agent of the state, who was authorized to sell for cash only, took a note for the purchase price, the transaction was held invalid for want of consideration. *State v. Torinus,* 24 Minn. 332. Thereafter the transaction was expressly ratified by the legislature. A second suit was then brought by the state, the ratification upheld, and the contract enforced. *State v. Torinus,* 26 Minn. 1, 49 N. W. 259, 37 Am. Rep. 395. Such statutes, ratifying the unauthorized acts of the state's agents, are usually referred to as validating acts and are uniformly upheld. *Utter v. Franklin,* 172 U. S. 416, 19 Sup. Ct. 183, 43 L. Ed. 498; *U. S. Mortgage Co. v. Gross,* 93 Ill. 483, 494, 108 U. S. 477, 2 Sup. Ct. 940, 27 L. Ed. 795; *State ex rel. v. Sickler,* 9 Ind. 67, 71.

■■ The conclusion is inevitable that the validating act here under consideration was intended by the legislature to apply to those sales of surface rights, and that it validates such sales unless subject to some constitutional objection. In this connection our attention is called to section 11, article 2 of the state Constitution which provides "that no \* \* \* law \* \* \* retrospective in its operation \* \* \* shall be passed by the general assembly," and *Lanning v. Osborne,* 82 Fed. 575, as holding that a contract unlawful when made is not validated by subsequent legislation. In our opinion said constitutional provision does not apply, and was not intended to apply, to acts validating contracts theretofore made on behalf of the state. *New Orleans v. Clark,* 95 U. S. 644, 655, 24 L. Ed. 521; Cooley on Constitutional Limitations (8th Ed.), vol. 2, p. 779; *Satterlee v. Matthewson,* 2 Peters (U. S.) 380, 7 L. Ed. 458; *Cowell v. Colo. Springs Co.,* 3 Colo. 82.

■ Assuming that payments made on A and B prior to March 5, 1917, were made by "mistake or error," as that phrase is used in said section 1164, C. L. 1921, our decision on that date in *Walpole v. State Board, supra,* put at rest any such question as to payments thereafter made. Yet on April 3, 1917, the purchaser of B made a payment of $157.50 on his contract, and after the passage of the act of 1917, and after our decision in *Gunter v. Walpole, supra,* and after the passage of the act of 1919, the purchaser made payments on A totalling $937.60. Since said sections providing for cancellation and forfeiture in case of default were in force when these sales were made, they were written into the contracts, and since the purchaser took no action of any kind indicating the withdrawal of his assent to the contract until long after they were validated, they stand as though fully authorized when made, and the cancellation thereof and the forfeiture of payments thereunder are in all respects as valid as if these sales had originally been sales of the fee. Neither is there any force in the contention that this construction works an injustice upon the purchaser. He is merely held to the contract he made and the state gives him exactly what he bought. *Lanning v. Osborne, supra,* does not touch the question of a validating statute clearly intended by the legislature as a ratification of acts theretofore performed by the state's agent without authority. It simply holds that the unauthorized act of such agent is not validated by a statute which "does not even purport to make valid any contract otherwise invalid."

■ We come now to the only confusing question raised by this record, the construction of a mystifying and apparently meaningless portion of the statutes under consideration. Immediately following the validating portion of the acts of 1917 and 1919 we find this clause: "Provided, that the holders of such certificates of purchase or the owners of said lands so patented shall by contract, deed or other agreement acknowledge or re-

convey to the state the minerals and substances so reserved, and the State Board of Land Commissioners is hereby authorized to accept on behalf of the state such deeds and conveyances and to make such agreements as may be necessary to carry out the provisions of this act.''

Mindful of the rule of statutory construction which obliges us to give some meaning, if possible, to every word, phrase and sentence of every act of the legislature, we yet find it difficult to comply with respect to this. Before it found a place in the act of 1917, we had held that the purchaser at such a sale received nothing, hence nothing could be reconveyed by deed or agreement, nothing could be accepted on behalf of the state by the board, and no possible agreement was necessary by the board to carry out the provisions of the act. All this had been reaffirmed prior to the reenactment of this proviso in 1919. However, if this is construed as granting any right to the purchaser, it certainly was a right which he could waive, and which, when he continued to make payments on sales of surface rights after the passage of the validating act, and thereafter defaulted, making his contract subject to cancellation, and his payments subject to forfeiture, he did waive. No authorities construing such a proviso have been cited by counsel for either of the parties and we have found none. This is doubtless due to the fact that such a proviso was never before enacted by a legislative body. Any other construction, however, would, it seems to us, involve the holding that prior to the passage of these validating acts something had been conveyed to a purchaser of surface rights, hence would necessarily involve the overruling of *Walpole v. State Board* and *Gunter v. Walpole, supra,* and lead to inextricable confusion.

Several other interesting questions are presented by the record and argued by counsel, but since the foregoing disposes of the case upon its merits those questions need not be examined.

The judgment is accordingly reversed with directions

to the trial court to dismiss the cause at the costs of the bank.

MR. JUSTICE CAMPBELL and MR. JUSTICE HILLIARD not participating.